**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kenneth W. CONRAD, Defendant-Appellant.**

**No. 71–1113.**

United States Court of Appeals, Ninth Circuit.

Aug. 20, 1971.

Rehearing Denied Sept. 22, 1971.

R. Kelly Hocker (argued), Temple, Ariz., for appellant.

James M. Wilkes, Ass't. U. S. Atty., (argued), Richard K. Burke, U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY and CARTER, Circuit Judges and BELLONI,* District Judge.

JAMES M. CARTER, Circuit Judge.

Appellant was convicted by a jury and sentenced for conspiring to violate 21 U.S.C. § 176a. He appeals, making the following contentions:

(1) The evidence was insufficient;

(2) The trial court deprived him of due process by restricting his cross-examination of co-conspirators who testified for the Government;

(3) The trial court improperly refused to limit cross-examination of a defense witness;

(4) The prosecuting attorney was guilty of prejudicial misconduct in his closing remarks to the jury;

(5) The trial court erred when it refused to suppress marihuana seized from a co-conspirator;

(6) The trial court erred when it admitted the marihuana into evidence against appellant.

We find the contentions without merit and affirm appellant's conviction.

Adams, Foster and Kochel, residents of Tuscon, Arizona, and Apodaca, a col-

* Honorable Robert C. Belloni, United States District Judge, District of Oregon, sitting by designation.

lege student at Yuma, Arizona, entered into an agreement to smuggle marihuana into the United States from Mexico. Foster and Kochel were the money men. Apodaca was in charge of hiring individuals to smuggle marihuana across the international border and take it to the airport at Yuma. Adams was to obtain pilots to fly the marihuana from Yuma to Tucson.

Appellant was a friend of Adams and a commercial pilot. On January 10, 1970, appellant met with Adams, Foster and Kochel in Tuscon and agreed to fly marihuana from Yuma to Tucson. On the next day, appellant flew Adams, Foster and Kochel from Tucson to Yuma, and accompanied them when they discussed the transaction with Apodaca. On the morning of January 12, appellant helped Adams load approximately 300 kilos of marihuana into a plane at the airport at Yuma, and flew it to Tucson where he was paid for his part in the transaction.

## I.

*Sufficiency of the Evidence.*

Appellant contends that the evidence was insufficient to establish his knowledge of a conspiracy to illegally import marihuana. We disagree.

With respect to the meeting in Tucson on January 10, Kochel testified that he, Foster, Adams and appellant were present. Kochel further testified:

"We arranged that he [appellant] would pick us up on a certain day, which turned out to be the 11th, and fly us to Yuma, and *the marihuana would be crossed*, and then he would fly it up to Tucson." [Emphasis added].

Foster was called as a witness and testified about the same meeting. He testified that he, Kochel, Adams and appellant were present. The following appears from his testimony:

"Q. Do you recall the conversation with Mr. Conrad in regard to *this smuggling of the marihuana,* and flying it from Yuma to Tucson?

"A. Yes. And I asked him if he would mind flying marihuana in his airplane. And he said he would be willing to if the price was right." [Emphasis added].

A price of $1000.00 for each flight, plus expenses, was agreed upon.

Appellant did not object to the form of the above question. Further, he had the opportunity to cross-examine Foster on any qualifications or limitations to the answer.

Foster also testified that he flew to Yuma, Arizona the next day with Adams, Kochel and appellant. Appellant flew the plane. Appellant and Adams rented a car and the three men went to Arizona Western College and met Apodaca in his room at the college. A conversation ensued. Foster testified:

"We talked to Mr. Apodaca about whether his end of the transaction was together, as far as the people to actually smuggle the marihuana into the United States, and if he had talked to the man in Mexico that had the marihuana * * * I don't believe either one of them [appellant and Adams] participated in the actual conversation. I think they sat there. They may have been introduced to Mr. Apodaca. I don't believe they participated in the actual conversation."

Adams, a witness for the government, testified that he and appellant were sleeping in a room in the Washyuma Hotel in Yuma, Arizona, waiting to be contacted concerning the smuggled contraband; that Messer came to the room, woke them up and told Conrad he was ready to leave and that he (Adams) and Conrad got dressed and went to the airplane. At the aircraft Messer handed the marihuana to Adams who in turn handed it to the appellant. Appellant was on the wing of the airplane and put the marihuana in the aircraft. Appellant then flew the aircraft to Tucson.

We hold that this evidence was sufficient to establish that appellant knew of the conspiracy to smuggle marihuana.

## II.

### Restriction of Cross-Examination.

■ Appellant contends that he was denied due process by the trial court's restriction of his cross-examination of co-conspirators testifying for the Government. These witnesses had been indicted with appellant for violations of 21 U.S.C. § 176a resulting from their activities of January 10 to 19 and pled guilty, prior to appellant's trial, to violations of 26 U.S.C. § 4744(a). Appellant contends that he should have been allowed to cross-examine these co-conspirators as to offenses committed by them prior to January 10, even though they would have exercised their Fifth Amendment right not to respond.[1] The proposed cross-examination concerned alleged offenses which had not resulted in felony convictions.

Appellant's first theory is that the cross-examination would have demonstrated the motivation of the witnesses to give false testimony in the hope of avoiding prosecution for their prior offenses. We hold that the trial court did not abuse its discretion in precluding cross-examination of co-conspirators on prior offenses which had not resulted in felony convictions, to impeach their testimony. See Viramontes-Medina v. United States (9 Cir. 1969), 411 F.2d 981. Any impeachment value of such cross-examination would have been cumulative to that resulting from inquiry into the witnesses' hopes for reduced sentences as a result of their guilty pleas to the offenses to which they pled guilty.[2]

Appellant argues that this opportunity to cross-examine the witnesses on their expectations of leniency was inhibited by the trial court's indication that, if appellant's counsel did so, the court would inform the jury about the differences in the potential sentences for the indicted and pled offenses and about the procedure for accepting the guilty pleas.[3] We cannot say that this indication by the trial court that it would attempt to give the jury the whole story improperly inhibited appellant's cross-examination because we do not know specifically what the court would have attempted to communicate to the jury and the manner in which it would have been communicated. The trial court offered to have the information written out before it was communicated to the jury. Appellant did not accept the offer.

Appellant's second theory is that the cross-examination of the co-conspirators on their prior activities should have been permitted because it would have shown their *modus operandi*. It would have revealed, appellant argues, that they had long engaged in the illegal activities; the jury could have inferred from this that they would not have introduced a new man into the scheme and that, therefore, whatever contact appellant had with them was innocent. We hold that preventing cross-examination for this purpose was not error. It would have been futile since the witnesses would not have answered the questions.

■ Also, a trial judge has the discretion to keep a trial within reasonable bounds by excluding evidence if its probative value is outweighed by the consumption of time and confusion of is-

1. The record shows that the trial court was informed that the witnesses were advised by the prosecuting attorney and their own attorneys of their right to remain silent. The trial court and the parties assumed that pursuant to this advice the witnesses would not testify to prior offenses. Appellant did not request a determination of whether they would testify or not.

2. 21 U.S.C. § 176a provides for a sentence of 5 to 20 years and a fine up to $20,000.

26 U.S.C. § 4744(a) provides for a sentence of 2 to 10 years with a fine up to $20,000. A court may grant probation under § 4744(a) but not under § 176a.

3. Prior to this indication by the trial court, appellant did obtain on cross-examination testimony from Kochel that he hoped for probation on the offense to which he pled guilty.

sues resulting from its admission. Had the witnesses answered the questions, despite their counsel's advice, issues of fact as to various other alleged crimes would have been injected into the record. The substantial multiplication of factual issues, because of efforts to prove and disprove the alleged prior offenses, none of which had resulted in a conviction, far outweighted the probative value which would have resulted from opening up the matter on cross-examination.

■ Finally, the extent of cross-examination rests in the sound discretion of the trial court. Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1941). We find no abuse of discretion.

### III.

*Refusal to Limit Cross-Examination of Defense Witness.*

Appellant contends that the trial court improperly refused to limit cross-examination of his proposed witness Condry. Kochel, Foster and Adams testified that appellant discussed flying marihuana in a meeting with them in Tucson on the morning of January 10. Adams placed the time of the meeting at about 9:00 A.M. Appellant testified that on the night of January 9, he was at a tavern in Yuma called the "We Three" with Adams, who won $1100 in a pool game with its owner, Condry. Appellant also testified that the next morning he was in Yuma with Adams when part of the gambling debt was collected at the "We Three." Adams testified that the game and collection occurred some time before January 9, on about the 5th or 6th.

Appellant wished to impeach the testimony of his co-conspirators and support his own testimony by calling Condry to testify about the date of the pool game against Adams. Condry indicated, however, that if called and asked whether he gambled, he would claim the protection of the Fifth Amendment because he was the owner of the bar in which the gambling, a violation of state law, occurred

and his liquor license would be jeopardized.

Appellant sought a ruling from the trial court preventing the Government from asking on cross-examination any question that would result in Condry exercising his Fifth Amendment right to refuse to answer. The trial court refused to make such a ruling; and further stated, that following its usual practice in such situations, it would advise Condry of his right against self incrimination.

Appellant argues that this action by the trial court was error because the questions that he sought to preclude constituted impeachment of Condry's credibility with specific acts of misconduct not amounting to a conviction. The Government argues that the questions were to be cross-examination about specific acts testified to on direct examination.

■ We cannot hold that the trial court abused its discretion by refusing to prevent cross-examination for the purpose of pinning Condry down on specific acts testified to on direct examination, even though the cross-examination would reveal misconduct because the Government had such a right, and because we do not know the exact scope of the proposed direct examination of Condry. Questions might have been artfully framed which would have limited the scope of cross-examination and protected appellant. The court did not prohibit appellant's counsel from asking questions. Condry was not recalled by appellant and no questions were put to him. We find no error.

### IV.

*Misconduct by the United States Attorney.*

Appellant contends that the prosecuting attorney was guilty of misconduct in his closing argument to the jury in that he asserted that no promises were made to government witnesses. Government witnesses testified that no promises had

been made to them. In his closing argument, the prosecuting attorney stated:

"If the Court please. Ladies and gentlemen. There is no indication to you whatsoever that those guys are not going to be prosecuted for any crimes other than what they testified to here today.

And let us set that straight right now. Those guys indicated that no promises were made to them, and none were made to them.

Mr. Foster said on the stand if I prosecuted the man that he talked to, and we found out that he had lied, that he would be personally prosecuted by me for perjury.

No promises of any kind were made. Ladies and gentlemen, those people under oath testified to the truth, they said, as to what occurred. The pled guilty in this courtroom before this Judge on last Friday. They told this Judge what happened.

Are they going to sit on that stand in front of this man who holds their fate, and lie?"

■ Appellant contends that this was a misstatement of fact by the prosecutor and testimony vouching for the credibility of the witnesses. We disagree and conclude, especially in light of appellant's failure to object to the remarks at trial, that the remarks were permissible argument on the evidence before the jury.

## V.

### Standing on Motion to Suppress.

■ Appellant contends that marihuana seized on January 19, 1970 from a car driven by co-conspirator Messer should have been suppressed as evidence against him. He argues that he has standing to object to the search even though he claimed no interest in the car or the contraband.

We hold that appellant did not have standing to object to the search. In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court held that one charged with possession of seized property is an aggrieved person with standing to object to a search. Contrary to appellant's argument, appellant was charged with *conspiracy* to smuggle marihuana into the United States. He was not charged with a crime of possession within the rule laid down in *Jones*. Sendejas v. United States (9 Cir. 1970), 428 F.2d 1040, 1043, with a similar set of facts, is controlling.

We also reject appellant's argument that he has standing to object to the search, under McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948), based upon the pretrial motions to suppress by codefendants who had standing, even though they entered guilty pleas before his trial. We conclude that *McDonald* no longer has any vitality in light of Alderman v. United States, 394 U.S. 165, 173 n. 7, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969) where the Court rejected the argument that evidence inadmissible against one defendant or conspirator is also inadmissible against his codefendant or co-conspirator and said, "It is not at all clear that the *McDonald* opinion would automatically extend standing to a codefendant."

## VI.

### Admission of the Marihuana into Evidence.

■ Appellant contends that the marihuana seized on January 19, 1970 was improperly admitted into evidence against him because it was not relevant since he had no part in the activities of that evening. The evidence was properly admitted because it was transported by a co-conspirator pursuant to the conspiracy in which appellant was shown to have participated. United States v. Friedman (9 Cir. 1971), 445 F.2d 1076.

The judgment is affirmed.