## Michael S. Lewis *v.* State of Indiana.

[No. 2-1073A237. Filed August 4, 1975. Rehearing denied
August 25, 1975.]

*J. E. Holwager, Holwager & Harrell,* of Beech Grove, for
appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Michael Lewis was charged on February 16, 1973, with violation of the 1935 Narcotics Act, IC 1971, 35-24-1-2, Ind. Ann. Stat. § 10-3520 (Burns 1956), as amended by Acts 1961, ch. 90, § 2, p. 172-173.[1] Lewis was tried without jury on May 18, 1973, and found not guilty as to Count I, which alleged possession of narcotics paraphernalia, but guilty as to Count II, which alleged possession of heroin.

The facts most favorable to the State reveal that in February of 1973, Captain Clarence White of the Indianapolis Police Department was assigned to Lockfield Gardens, an apartment complex in Indianapolis. On February 14 and 15 Captain White received several telephone calls concerning activities of individuals in an apartment on Blake Street. After determining from the complex's manager that the apartment was supposed to be vacant, Captain White obtained the assistance of a uniformed patrolman, Officer James Myers, and they went to investigate.

When the officers arrived at the apartment, Captain White knocked on the door and the defendant Lewis opened the door to answer. Upon being questioned by the officers as to what he and his two companions were doing in a supposedly vacant apartment, Lewis invited the officers into the living room so as to show them that he was merely cleaning the apartment and that nothing illegal was going on. Once inside the apartment, Captain White saw a needle and syringe atop a dresser in the apartment's hallway. When White picked up the syringe, he noticed a blackened "cooker" cap containing a wad of cotton. These items were impounded and turned over to the narcotics division. The cotton wad found in the cooker was analyzed and found to contain "a residue of heroin, the derivative called opium." The analysis of the cotton proved positive for heroin.

---

1. The 1935 Narcotics Act was repealed by Acts 1973, P.L. 335, § 6, and has been replaced by IC 1971, 35-24.1-1-1 through 35-24.1-6-1, Ind. Ann. Stat. § 10-3558 through 10-3566 (Burns Supp. 1974).

Lewis argues in his brief that there was insufficient evidence at trial to establish venue and that a "residue" of heroin is an insufficient quantity of heroin upon which to predicate a conviction for possession of that drug. However, neither of these issues are contained in the motion to correct errors or supporting memorandum. These allegations of error, therefore, are not necessary to be considered by this court. Ind. Rules of Procedure, Trial Rule 59 (G) ; *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227; *Rutledge* v. *State* (1975), 164 Ind. App. 468, 329 N.E.2d 603. Lewis alleged in his motion to correct errors that the State failed to prove a material element in the charge, i.e., "that the defendant 'possessed' the heroin residue found in the 'cooker'; the record showing three persons occupying the premises at the time of search." While this argument is presented in detail in the memorandum supporting the motion to correct errors, it is not briefed and we must therefore deem the issue waived. Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7) ; *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805; *Beech* v. *State* (1974), 162 Ind. App. 287, 319 N.E.2d 678.[2] This court is properly presented with only the following questions:

1. Whether the trial court erred in admitting into evidence the cooker and the heroin it contained.

2. Whether the trial court erred in overruling Lewis' motion for discharge filed under Ind. Rules of Procedure, Criminal Rule 4.

## COOKER AND HEROIN PROPERLY ADMITTED

Lewis asserts that the cooker and the residue of heroin it contained should have been excluded as the fruits of an unlawful search, the police having no search warrant or justification for a warrantless search of the apartment. The

---

2. We are not unaware of the seeming factual inconsistency presented by Lewis' conviction for possession of the heroin in the cooker and his acquittal for possession of the cooker and the syringe as narcotics paraphernalia. But since Lewis has failed to draw attention to this potential issue at any stage of these proceedings, and since we do not think that any inconsistency which might exist amounts to fundamental error, we do not consider this problem.

State has two responses to this challenge: (1) Lewis has no standing to object to the legality of any search of the apartment, not being a registered tenant of that apartment, and (2) the evidence was not obtained by a "search" at all. Rather it is contraband which was in Captain White's "plain view" as he stood in the living room of the apartment after being invited in by Lewis. While we find that Lewis has the requisite standing to object to the method by which the evidence was obtained by police, we conclude that the cooker and the heroin are not the fruits of an unlawful search.

Lewis' standing to object to the method by which the cooker was seized does not depend on the lawfulness of his occupancy of the apartment, but exists because the fruits of the alleged search constitute the evidentiary basis of his conviction. *Jones* v. *United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; *Burton* v. *State* (1973), 260 Ind. 94, 292 N.E.2d 790; *State* v. *Porter* (1975), 163 Ind. App. 509, 324 N.E.2d 857.

As to the legality of the seizure of the "cooker" and hypodermic syringe, the evidence when viewed in the light most favorable to the State supports the State's position. Captain White clearly had a right to be in the front room of the apartment in light of his testimony that Lewis "asked me to step into the apartment." We cannot disbelieve Captain White's testimony that he could see the syringe in plain view atop the dresser in the apartment's hallway once he was inside the apartment. These facts bring this case within the "plain view doctrine" since the items were properly visible and the items' appearance gave Captain White reasonable grounds to believe they were contraband and therefore seizable without a warrant.[3] *See Millar* v. *State* (1973), 260 Ind. 368, 295 N.E.2d 814; *Johnson* v. *State* (1975),

---

3. *See* McCormick, EVIDENCE § 171, p. 390 (2d ed. 1972), wherein it is stated that "[i]f an object is in 'plain view', it may be seized without a warrant, providing there is probable cause to believe it is subject to seizure." *See also Coolidge* v. *New Hampshire* (1971), 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564.

163 Ind. App. 684, 325 N.E.2d 859; *Johnson* v. *State* (1973), 157 Ind. App. 105, 299 N.E.2d 194.

## MOTION FOR DISCHARGE PROPERLY OVERRULED

Lewis asserts that the trial court erred in denying his motion for discharge made orally on May 18, 1973, before the swearing of witnesses for the trial, in that he was not brought to trial within 50 judicial days as required by CR. 4 as then in effect. The State admits that Lewis was not tried within 50 judicial days of the filing of his motion for early trial on February 28, 1973, but asserts that trial court's refusal to discharge Lewis was proper in that any delay beyond the permissible period was caused by Lewis' actions. We conclude that the denial of Lewis' motion for discharge was proper.

CR. 4(B) as it existed in 1973 reads in pertinent part as follows:

"(B)    Defendant in jail-Motion for early trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within fifty [50] judicial days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such fifty [50] judicial days because of the congestion of the court calendar, Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule."[4]

---

4. CR. 4(B) has been amended and, as applicable to all motions for early trial filed on and after June 4, 1974, now reads, insofar as is here pertinent, as follows:

"(B) (1) Defendant in jail-Motion for early trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule."

Lewis filed his motion for speedy trial on February 28, 1973. Trial by jury was set for April 16, 1973, forty-seven days from the date of the filing of the motion for speedy trial. Hence the original trial setting was within the period allowed under CR. 4(B) as then extant. Trial was not had until May 18, 1973, well beyond the maximum fifty judicial days allowed. Our task is to determine why the trial date was moved from April 16 to May 18 and who was responsible therefor.

The explanation for the failure to try Lewis on April 16 can be found in the colloquy which occurred on that date, at which time Lewis filed his waiver of jury trial:

> *"Court:* State vs. Michael Lewis. There is a great big 'Will Go' next to it, great big 'Will Go'.

> \* \* \*

> *"Mr. Levy:* I was pre-advised that the first indication . . . was aware that that we were going to waive and try this by Court with the Prosecutor's office in the person of Mr. Beplay and the Court attaches and I also advised them as to our change and am prepared now to waive the right to trial by Jury and have the Court set this down for trial by Court, soon, within a week or so.

> *Court:* How about tomorrow?

> *Mr. Levy:* That will be fine . . . or, I do have two witnesses which I must subpoena on behalf of this Defendant, so I would imagine three days would be a minimum, Your Honor, in order to assure service. We are prepared to dispose of this by Court.

> *Court:* That is a fact? Well, let me see. Let me see here . . . Is that what the State wants to do?

---

Effective February 1, 1974, the following section was added to CR. 4:

"(F)   Time periods extended. When a continuance is had on motion of the defendant, or delay in trial is caused by his act, *any time limitation contained in this rule shall be extended by the amount of the resulting period of such delay caused thereby.* However, if the defendant causes any such delay during the last thirty (30) days of any period of time set by operation of this rule, the State may petition the trial court for an extension of such period for an additional thirty (30) days. (emphasis supplied)

Since CR. 4(F) did not apply to the proceedings below, we voice no opinion on the possible effect of the emphasized portion of that section on the proper computation of any period of delay chargeable to Lewis.

*Mr. Beplay:* Yes, Your Honor, I talked to all of the witnesses here and they could be here at any time the State, or the Court, would find.

\* \* \*

"*Court:* Well, of course, if you don't have to try it by Jury, I'd just as soon not, from the expense and time standpoint, although I don't like to see these waivers on the morning of the Jury trial.

*Mr. Levy:* Your Honor, I made it, uh, at least four days prior to this setting, the only thing I did not do was have the Defendant over here for the purposes of signing the waiver and filing them with the Court.

\* \* \*

"*Court:* How about May 18th at 9:30?

"*Mr. Levy:* Could we get it any sooner, Judge?

*Court:* Well, if it's going to be a trial . . .

\* \* \*

"*Court:* In the morning, that O.K.?

*Mr. Beplay:* May 18th at 9:30.

*Mr. Levy:* Thank you, Judge.

*Court:* You are welcome."

It is apparent that at least some of the delay arising from the failure to try Lewis on April 16 or 17 is attributable to Lewis by reason of the failure to file an effective[5] waiver of jury trial until the very morning of that scheduled jury trial.[6] It could be argued that in the instant case, Lewis sought only a delay of three days, or certainly no more than a week, and that any extension beyond that time would not be chargeable

---

5. There can be little doubt at this time that a waiver of jury trial is ineffective unless signed, or otherwise affirmatively acknowledged, by the defendant himself. *See Brady* v. *United States* (1970), 397 U. S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 742; *Lewis* v. *State* (1972), 259 Ind. 431, 288 N.E.2d 138.

6. There can be no doubt that such a delay is chargeable to Lewis since:

"Of course, ordinarily, the defendant may not divorce himself from the actions of his attorney in determining whether delay of the trial is properly chargeable to the defendant." *Collins* v. *State* (1975), 163 Ind. App. 72, 321 N.E.2d 868, 870.

to Lewis. Upon being confronted by a similar problem involving CR. 4(B), our Supreme Court stated:

> "The question then becomes, when there is a delay caused by defendant where an early trial had previously been requested, what amount of delay is attributable to the defendant's actions? This can be decided only on a case-by-case basis." *Gross* v. *State* (1972), 258 Ind. 46, 49, 278 N.E.2d 583, 585.

In *Gross, supra,* our Supreme Court upheld the trial court's determination as to the amount of delay chargeable to the defendant, finding that "under the circumstances of this case, the amount of time was entirely reasonable." Id. at 49, 278 N.E.2d at 585. We hold that the trial court's decision, implicit in its overruling of Lewis' motion for discharge, to charge the entire period between April 16 and May 18 to Lewis "entirely reasonable" under the circumstances of this case. The following exchange between the trial judge and Lewis' trial counsel on May 18, 1973, regarding the trial court's overruling of Lewis' motion for discharge, suggests the reasoning behind our holding:

> "*Mr. Levy:* . . . I am advised by this defendant here that at the time that we filed our waiver of jury trial, he tells me that it is his recollection that the request was made for a setting within the next two or three days so we could dispose of it and not as the Court indicated at the next calendar setting. We, I think the request was for in the next two or three days, Judge.
>
> *Court:* Well, that's not indicated.
>
> *Mr. Levy:* I understand, but I don't think the record would reflect that I requested a setting of the next available Court date.
>
> *Court:* Well, you can only have trials when trial dates are open.
>
> *Mr. Levy:* I understand that.
>
> *Court:* You can't have them just when you want them willy-nilly.
>
> *Mr. Levy:* I understand.
>
> *Court:* And our trial calendars are set one and two months in advance."

As a practical matter, the unwillingness of Lewis to try the case on April 16 or April 17 required that the cause be set for the next available date.[7] That the trial could not be set for the second or third day following April 17 is not surprising in light of the general status of trial court calendars. Lewis was therefore properly chargeable with the delay of trial to the next available date of May 18, 1973.

Judgment affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 332 N.E.2d 107.

---

7. When Lewis' counsel informed the trial judge of the waiver of jury trial on the day scheduled for jury trial, April 16, it is not surprising that the judge offered to try the case on April 17 since the trial judge, anticipating a lengthy jury trial of the case, likely had kept both April 16 and April 17 open on the court calendar. The trial judge's offer to try the case on the 17th was refused, thus necessitating a much later trial setting.