## DUNCAN, ETC. AND SMITH *v.* STATE OF MARYLAND

[No. 88, September Term, 1975.]

*Decided February 4, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ., and RAYMOND G.

THIEME, Associate Judge of the District Court of Maryland for District 7, specially assigned.

*Michael S. Elder, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Dennis M. Henderson, Assistant Public Defender,* on the brief, for appellants.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Our grant of the writ of certiorari in this case was "limited solely to the issue set forth in the petition for writ of certiorari," which was:

> "Did the Court of Special Appeals err in holding that the decision of the United States Supreme Court in *Cecil Jones v. United States* [, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960),] is no longer controlling law in Maryland and that the Petitioners, by relying upon the rule, of automatic standing which that case established, failed to show that they had standing to challenge the legality of the search of an automobile and seizure therefrom of evidence used against them at trial?"

The Court of Special Appeals in *Duncan and Smith v. State,* 27 Md. App. 302, 317, 340 A. 2d 722 (1975), held "that the 'automatic standing' notion of *Cecil Jones"* did not apply here "primarily because of [that court's] considered belief that the very concept of 'automatic standing' has been superseded and rendered a dead letter by *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968)." We disagree. We hold that there was "automatic standing." Therefore, the Court of Special Appeals must determine in this case whether the evidence in question was properly admitted.

Appellants, Sherman Duncan and Cornell Smith (Duncan and Smith), were jointly indicted in Frederick County. Each was charged with grand larceny and receiving stolen goods. Each elected a court trial. Smith was convicted of grand larceny by Judge Clapp. As it is put in the agreed statement of facts filed in this Court under Maryland Rule 828 g in lieu of a printed record extract, in so doing the trial judge based his "decision on the presumption that one in possession of recently stolen goods is the thief." Chief Judge Shure convicted Duncan of receiving stolen goods. The agreed statement of facts states, "Again the trial court grounded its verdict on the presumption which arises from the possession of recently stolen goods."

The facts leading up to the arrest of Duncan and Smith and the search and seizure here under consideration are set forth in full at pages 307-10 of 27 Md. App. We need not recount them here. It will be sufficient for our purposes to say that an important part of the evidence adduced against both defendants was clothing with price tags from Montgomery Ward Co., Inc., attached, which clothing was found in two plastic trash bags as a result of the search of a vehicle parked immediately adjacent to a public road but on private property. Messrs. Duncan and Smith allegedly were returning to this vehicle at the time they were apprehended. They were identified by the owner of the land where the car was parked as the individuals she had seen in the vehicle a short time earlier.[1] Neither defendant took the stand in his own defense. Both appellants objected to introduction of the evidence thus obtained. A motion to suppress the evidence was filed by Smith, but since it was not filed five days prior to the date of trial, it was not heard in advance of trial. Rule 729 d 1. Smith specifically relied upon *Jones* in argument by his counsel to the court. No mention of *Jones* was made by counsel for Duncan. The State argued in Duncan's case that he had no standing to object to the evidence because he was

---

1. The agreed statement of facts filed pursuant to Maryland Rule 828 g in lieu of a printed record extract states that the vehicle had not been reported stolen and was registered in the name of Shirley Ann Duncan of 5229 St. Charles Avenue, Baltimore.

a trespasser. In Smith's case the State argued lack of standing because he was a trespasser and also because it claimed the vehicle in question was abandoned. In Smith's case the trial judge held "the search and seizure [to be] valid [and] reasonable ... [and based] on probable cause ...." Therefore, he "admit[ted] the evidence of the articles that were found upon that search of the trunk." In Duncan's case the court phrased the question as "whether or not the search of th[e] vehicle without a search warrant was reasonable under the circumstances ...." The evidence was held properly admissible. Thus, in each instance the trial judge implicitly found standing.

In one regard this case is similar to *United States v. Moody*, 485 F. 2d 531 (3d Cir. 1973), where the court said:

> "[T]he issue [of the continuing validity of *Jones*] was not raised by the government until this appeal, and as a result, the district court has had no opportunity to examine the question. It goes without saying that the proper function of the court is to review the work of the district court, and not to make initial determinations on complicated issues." *Id.* at 533, n. 3.

Indeed, the issue of the continuing viability of *Jones* appears in this instance to have been raised by the Court of Special Appeals *ex mero motu*. Although the State in its brief in the Court of Special Appeals mentioned *Jones* and claimed that there was no standing on the part of Duncan and Smith, it at no time contended that *Jones* was no longer viable nor did it discuss *Brown v. United States*, 411 U. S. 223, 93 S. Ct. 1565, 36 L.Ed.2d 208 (1973), or *Simmons v. United States*, 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968), which we shall later discuss and which were strongly relied upon by the Court of Special Appeals in reaching its conclusion.

In *Jones* the first count of the indictment charged him with having "purchased, sold, dispensed and distributed" narcotics in violation of the statute in that they were not in or from the "original stamped package." The second count charged him with having "facilitated the concealment and

sale of" the same narcotics, knowing them to have been imported illegally into the United States. The Court said that "[b]oth statutory provisions under which [Jones] was prosecuted permit conviction upon proof of the defendant's possession of narcotics, and in the case of [the first charge] of the absence of the appropriate stamps." The seized narcotics were found in a bird's nest in an awning outside of a window in the apartment of a friend of Jones. Jones had been permitted to use the apartment "as a friend." He had slept there "maybe a night." At the time of the search Jones' friend had been in another city for about five days. The motion by Jones to suppress the evidence was denied on the basis of his lack of standing. Mr. Justice Frankfurter said for the Court that the issue of standing was "to be decided with reference to Rule 41 (e) of the Federal Rules of Criminal Procedure" which accords standing to object on certain grounds to "[a] person aggrieved by an unlawful search and seizure." The Court pointed out that in order to qualify as a person so aggrieved "one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." It perceived a special problem in establishing standing in cases similar to that before it, "[s]ince narcotics charges like those in [that] indictment may be established through proof solely of possession of narcotics [as a result of which] a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him." The Court said:

> "[W]e are persuaded by this consideration: to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the

search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e).

"The Government's argument to the contrary essentially invokes *elegantia juris*." *Id.* 362 U. S. at 263-64.

As an alternate ground for Jones' standing, the Court found that he had made out sufficient interest in the premises. It said:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated." *Id.* at 267.

In *Simmons* the Court viewed from a somewhat different posture a dilemma similar to that passed upon in *Jones.* Garrett and another were convicted of armed robbery of a federally insured savings and loan association. FBI agents at

the home of the mother of one of the defendants had seized a suitcase containing a gun holster, a sack similar to the one used in the robbery, and several coin cards and bill wrappers from the savings and loan association which had been robbed. Garrett moved before trial to suppress the evidence. In order to establish his standing, he testified that although he could not identify the suitcase with certainty, it was similar to one he had owned and that he was the owner of clothing found inside the suitcase. The motion to suppress was denied. His testimony at the suppression hearing was admitted against him at trial. He contended that his constitutional rights were violated when testimony given by him in support of his "suppression" motion was so admitted. Mr. Justice Harlan summarized for the Court the effect of the *Jones* decision, saying:

> "At one time, a defendant who wished to assert a Fourth Amendment objection was required to show that he was the owner or possessor of the seized property or that he had a possessory interest in the searched premises. In part to avoid having to resolve the issue presented by this case, we relaxed those standing requirements in two alternative ways in *Jones v. United States, supra.* First, we held that when, as in *Jones*, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence. Second, we held alternatively that the defendant need have no possessory interest in the searched premises in order to have standing; it is sufficient that he be legitimately on those premises when the search occurs." *Id.* 390 U.S. at 389-90.

The Court noted the distinction between the situation of *Jones* where a possessory crime was charged and the problem of a defendant such as Garrett in *Simmons*:

> "The dilemma faced by defendants like Garrett is

most extreme in prosecutions for possessory crimes, for then the testimony required for standing itself proves an element of the offense. We eliminated that Hobson's choice in *Jones v. United States, supra*, by relaxing the standing requirements. This Court has never considered squarely the question whether defendants charged with non-possessory crimes, like Garrett, are entitled to be relieved of their dilemma entirely." *Id.* 390 U. S. at 391-92.

The Court pointed out that "[t]he rule adopted by the courts below does not merely impose upon a defendant a condition which may deter him from asserting a Fourth Amendment objection — it imposes a condition of a kind to which [the Supreme] Court has always been peculiarly sensitive." It then went on to say:

"For a defendant who wishes to establish standing must do so at the risk that the words which he utters may later be used to incriminate him. Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. Thus, in this case Garrett was obliged either to give up what he believed, with

advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.* 390 U. S. at 393-94.

*Simmons* was decided March 18, 1968. In *Mancusi v. DeForte,* 392 U. S. 364, 88 S. Ct. 2120, 20 L.Ed.2d 1154 (1968), argued and decided after the decision in *Simmons,* the Court relied upon the rule enunciated in *Jones* that "anyone legitimately on premises where a search occurs may challenge its legality . . . when its fruits are proposed to be used against him" to hold that a union official had standing to object to the admission of papers at his trial seized in the search of an office described as "one large room, which he shared with several other union officials." The Court observed that "[t]he record does not show from what part of the office the records were taken" and that "DeForte d[id] not claim that it was a part reserved for his exclusive personal use." Mr. Justice Black, in a dissent joined by Mr. Justice Stewart, was concerned with the extension of the *Jones* rule in *Mancusi.* Among other things, he asked whether the "dictum [of *Jones* that 'anyone legitimately on premises where a search occurs may challenge its legality . . . when its fruits are proposed to be used against him' would] enable a janitor to escape the use of evidence illegally seized from his boss." Significantly, however, he did not question the continued viability of *Jones* in the light of *Simmons,* but said that "the Court's opinion indicate[d] to [him] that the Court [was] preparing the way to use *Jones* to eliminate entirely the requirement for standing to raise a search and seizure question and to permit a search to be challenged at any time, at any place, and under all circumstances, regardless of the defendant's relationship to the person or place searched or to the things seized."

Yet another case in the Supreme Court making mention of *Jones* subsequent to *Simmons* was *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). At the time the FBI searched the apartment in which Spinelli was alleged to be conducting his bookmaking operation, Spinelli was not on the premises. The agents did not execute their search warrant until he was seen to leave the apartment, lock the door and enter the hallway. Spinelli was then arrested, the key to the apartment was demanded of him, and the search commenced. In n. 2 the Court observed:

"We agree with the Court of Appeals that Spinelli has standing to raise his Fourth Amendment claim. . . . Since petitioner would plainly have standing if he had been arrested inside the apartment, *Jones v. United States,* 362 U. S. 257, 267 (1960), it cannot matter that the agents preferred to delay the arrest until petitioner stepped into the hallway — especially when the FBI only managed to gain entry into the apartment by requiring petitioner to surrender his key." *Id.* at 412, n.2.

In *Combs v. United States,* 408 U. S. 224, 92 S. Ct. 2284, 33 L.Ed.2d 308 (1972), Combs and his father were convicted of receiving, possessing, and concealing 26 cases of tax-paid whiskey known by them to have been stolen from an interstate shipment. The whiskey in question had been seized from the farm of Combs' father under what was claimed to be an invalid search warrant. The Supreme Court said that "the Court of Appeals did not reach the merits of his claim respecting the warrant, . . . holding only that he lacked standing to challenge the legality of the search and seizure." It said that determination was made by the Court of Appeals on the ground "that he had 'asserted no possessory or proprietary claim to the searched premises' during the course of the trial." The Supreme Court observed that Combs' "failure to make any such assertion, either at the trial or at the pretrial suppression hearing, m[ight] well be explained by the related failure of the Government to

make any challenge in the District Court to [Combs'] standing to raise his Fourth Amendment claim." It further observed that "the record . . . before [it was] virtually barren of the facts necessary to determine whether [Combs] had an interest in connection with the searched premises that gave rise to 'a reasonable expectation [on his part] of freedom from governmental intrusion' upon those premises. *Mancusi v. DeForte*, 392 U. S. 364, 368 (1968).⁴ " It sent the case back to the Court of Appeals with directions that the case be sent back to the District Court for further proceedings. However, it observed:

> "⁴ The Court in *Mancusi* relied upon *Jones v. United States*, 362 U. S. 257 (1960), as having done away with 'the requirement that to establish standing one must show legal possession or ownership of the searched premises.' 392 U. S., at 369. In *Jones*, the Court held that the petitioner then before it had standing and enunciated two rules as alternative grounds for its decision. First, the *Jones* Court ruled that the 'possession on the basis of which [an accused] is to be . . . convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e),' Fed. Rule Crim. Proc.; second, the Court ruled that 'anyone legitimately on premises where a search occurs' has standing to challenge the legality of that search. 362 U. S., at 264, 267. The Government has urged that we take the opportunity, said to be presented by the instant case, to re-examine the first alternative holding of *Jones*. Even assuming we were disposed to do so, the Court of Appeals did not, in the opinion it filed in this case, deal with the question whether the nature of the charge against petitioner brought his case within the coverage of the first aspect of the *Jones* holding, and we decline to reach or consider issues not yet passed on by that court." *Id.* at 227.

In *Brown* the petitioners were convicted by a jury of transporting stolen goods and of conspiracy to transport

stolen goods in interstate commerce. As Mr. Chief Justice Burger put it for the Court, "The central issue [then before the Court was] whether petitioners ha[d] standing to challenge the lawfulness of the seizure of merchandise stolen by them but stored in the premises of . . . a co-conspirator." At the time of the seizure they were in police custody in a different state. The Court said:

> "Petitioners contend that they have 'automatic' standing to challenge the search and seizure at Knuckles' store. They rely on the decision of this Court in *Jones v. United States*, 362 U. S. 257 (1960), establishing a rule of 'automatic' standing to contest an allegedly illegal search where the same possession needed to establish standing is 'an essential element of the offense . . . charged.' *Simmons v. United States*, 390 U. S. 377, 390 (1968)." *Id.* 411 U. S. at 227.

The Court pointed out that under the holding in *Simmons*, the self-incrimination dilemma so central to the *Jones* decision could no longer occur and that in this case the petitioners "could have asserted, at the pretrial suppression hearing, a possessory interest in the goods at Knuckles' store without any danger of incriminating themselves," but "did not do so." It then went on to say:

> "But it is not necessary for us now to determine whether our decision in *Simmons, supra,* makes *Jones'* 'automatic' standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense . . . charged.' *Simmons*, 390 U. S., at 390. Here, unlike *Jones*, the Government's case against petitioners does not depend on petitioners' possession of the seized evidence at the time of the contested search and seizure." *Id.* 411 U. S. at 228.

It went on to hold:

> "In deciding this case, therefore, it is sufficient to

hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present. The Government cannot be accused of taking 'advantage of contradictory positions.' " *Id.* 411 U. S. at 229.

It added:

"Again, we do not decide that this vice of prosecutorial self-contradiction warrants the continued survival of *Jones'* 'automatic' standing now that our decision in *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such 'automatic' standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction." *Id.* 411 U. S. at 229.

At argument before us the State conceded that possession of recently stolen goods is a very important element in the proof where the crime charged is receiving stolen goods. *State v. Thibodeau,* 317 A. 2d 172 (Me. 1974) was decided subsequent to *Simmons* and *Brown.* In it the defendant was charged with having knowingly received stolen property. The court observed at p. 176 that "[t]he very nature of prosecutions for illicit possession of property accords the accused sufficient standing to [object to the search and seizure] as 'a person aggrieved by an unlawful search and seizure,' " relying upon *Jones,* among other cases.

It will be seen from an analysis of *Simmons* and *Brown*

that they are in no way inconsistent with the holding in *Jones* providing automatic standing for challenge to the legality of a search and seizure where the fruits of that seizure would go far to convict of a possessory crime such as here charged. It is apparent that a large number of courts do not share the view of the Court of Special Appeals that "the very concept of 'automatic standing' [enunciated in *Jones*] has been superseded and rendered a dead letter by *Simmons* . . . ." Cases which have applied the "automatic standing" rule of *Jones*, all of which were decided after *Simmons* in 1968 and some of which were decided after *Brown* in 1973, include: *United States v. Boston*, 510 F. 2d 35, 37 (9th Cir. 1974), *cert. denied*, 421 U. S. 990 (1975); *United States v. DeMarco*, 488 F. 2d 828, 829 (2d Cir. 1973); *United States v. Horton*, 488 F. 2d 374, 379 (5th Cir. 1973), *cert. denied*, 416 U. S. 993 (1974); *United States v. Legato*, 480 F. 2d 408, 410, n. 6 (5th Cir.), *cert. denied*, 414 U. S. 979 (1973); *United States v. Mapp*, 476 F. 2d 67, 72 (2d Cir. 1973) ("the Supreme Court concluded [in *Jones*], as we do here, that '[t]he possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e).' *Id.* at 264, 80 S. Ct. at 732. We hold to this view in light of the Court's statement in *Simmons*, *supra*, that, 'When, as in *Jones*, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence.' 390 U. S. at 390, 88 S. Ct. at 974. Nothing announced in *Alderman* [*v. United States*, 394 U. S. 165, 89 S. Ct. 961, 22 L.Ed.2d 176 (1969)], in any manner weakens the vitality of the *Jones* rule upon which we rely . . . ."); *United States v. Love*, 472 F. 2d 490, 496 (5th Cir. 1973); *United States v. Fields*, 458 F. 2d 1194, 1196 (3d Cir. 1972), *cert. denied*, 412 U. S. 927 (1973); *United States v. Gargiso*, 456 F. 2d 584, 586 (2d Cir. 1972); *United States v. Pastore*, 456 F. 2d 99 (2d Cir. 1972); *United States v. West*, 453 F. 2d 1351, 1354-55 (3d Cir. 1972); *United States v. Cobb*, 432 F. 2d 716, 721-22 (4th Cir. 1970) (The court addressed

itself to the argument that *Jones* had "been overruled '*sub silentio*' by *Simmons*" and found the "argument [to be] untenable . . . ."); *United States v. Allsenberrie*, 424 F. 2d 1209, 1212-14 (7th Cir. 1970); *Velasquez v. Rhay*, 408 F. 2d 9, 10 (9th Cir. 1969); *Cook v. State*, 134 Ga. App. 712, 714-15, 215 S.E.2d 728 (1975); *State v. Joao*, 533 P. 2d 270, 274 (Hawaii 1975); *State v. Dias*, 52 Hawaii 100, 105, 470 P. 2d 510 (1970); *People v. Vaglica*, 99 Ill. App. 2d 194, 240 N.E.2d 271, 273 (1968); *Lewis v. State*, 332 N.E.2d 107, 109 (Ct. of App. of Ind., 2d D. 1975); *State v. Thibodeau*, 317 A. 2d 172, 176 (Me. 1974); *Commonwealth v. Thomas*, 358 Mass. 771, 267 N.E.2d 489, 490-91, n. 1 (1971); *People v. Gonzalez*, 31 N.Y.2d 787, 788, 291 N.E.2d 391 (1972), *cert. denied*, 410 U. S. 988 (1973); *State v. Matthews*, 216 N.W.2d 90 (N.D. 1974) (contention made that *Brown* "remove[d] the 'automatic standing' described in *Jones*," to which the court said, "[W]e do not believe this is true." It then went on to say:

"To hold in this case that the State can, without a warrant, seize and open sealed packages, and use the evidence thereby obtained to convict a person who later picks up the package, would offend the Fourth Amendment as well as the North Dakota Constitution, Section 18. To deny standing to the defendant because he did not testify to a possessory interest and thereby acquire the immunity granted in *Simmons* is to substitute ritual for reality." *Id.* at 98);

and *Commonwealth v. Knowles*, 327 A. 2d 19, 21-23 (Pa. 1974).

Cases which have referred to the "automatic standing" rule of *Jones* but which have distinguished *Jones* from the facts at issue include *United States v. Colbert*, 474 F. 2d 174, 177 (5th Cir. 1973); *United States v. Banks*, 465 F. 2d 1235, 1240 (5th Cir.), *cert. denied*, 409 U. S. 1062 (1972); *United States v. Cowan*, 396 F. 2d 83, 86 (2d Cir. 1968); *People v. Pantoja*, 76 Misc. 2d 869, 351 N.Y.S.2d 873 (1974); and *State v. Christel*, 61 Wis. 2d 143, 211 N.W.2d 801, 804-807 (1973).

Numerous other cases have recognized the *Jones* "automatic standing" rule in dictum, *e.g. United States v. Colacurcio*, 499 F. 2d 1401, 1406 (9th Cir. 1974) (conspiracy to violate travel section of Anti-Racketeering Act); *United States v. Carrion*, 463 F. 2d 704, 706 (9th Cir. 1972) (conspiracy to smuggle marijuana into the United States and to receive and conceal illegally imported marijuana); *United States v. Scheffer*, 463 F. 2d 567, 570-71, 575 (5th Cir.), *cert. denied*, 409 U. S. 984 (1972) (importing narcotic drug into the United States; conviction not based on possession at time of search); *United States v. Conrad*, 448 F. 2d 271, 276 (9th Cir. 1971) (conspiracy to illegally import marijuana); *Sendejas v. United States*, 428 F. 2d 1040, 1043-44 (9th Cir.), *cert. denied*, 400 U. S. 879 (1970) (conspiracy to smuggle marijuana into the United States); *Duran v. United States*, 413 F. 2d 596, 602, *cert. denied*, 396 U. S. 917 (9th Cir. 1969) (narcotics violation; that no motion to suppress was made prior to trial was dispositive); and *State v. Ross*, 507 S.W.2d 348, 353 (Mo. 1974) (burglary and stealing).

As the Court of Special Appeals observed, *Jones* "became clearly binding on the states through *Mapp v. Ohio*, 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), and *Ker v. California*, 374 U. S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726 (1963)." The facts of this case are distinguishable from those in *Simmons* and *Brown*. If on a motion to suppress testimony persons such as Duncan and Smith were obliged to go no further than to merely assert that they owned the goods, then after *Simmons* there might be no need for *Jones*. Such is not the case, however. On a motion to suppress testimony an alert prosecutor might well elicit from persons in the position of Duncan and Smith small bits of information from which he could well develop the basis for additional investigation calculated to make the State's case stronger. This represents one of the very vices *Jones* was intended to prevent. The Supreme Court itself has not said *Jones* is "a dead letter." It is obvious that the majority of courts regard it as viable notwithstanding the fact that there has been no recent pronouncement from the Supreme

Court. *Simmons* did not involve a possessory crime. In *Brown* the persons protesting were not in immediate possession of the seized evidence. We find highly persuasive the statement of the Fourth Circuit in *Cobb*, notwithstanding the fact that it was decided prior to the decision of the Supreme Court in *Brown*. The court there said:

"This argument [that *Jones* has been overruled *'sub silentio'* by *Simmons*] is untenable for several reasons. First, *Simmons* gives no support to any idea that the Court was weakening in any particular the rule in *Jones*, much less overruling it *'sub silentio.'* On the contrary, as shown in the excerpt quoted *supra* from *Simmons*, the Court restated and reaffirmed the rule in *Jones* so far as it applied to crimes in which possession was an essential element. Secondly, *Simmons* was not concerned with a possessory crime: that situation had already been disposed of in *Jones* by giving one charged with such crime standing without requiring as a predicate for his motion a claim of a proprietary or possessory interest in either the vehicle searched or the property seized. Thus, in *Simmons*, the Court said, in marking out the issue before it, that, 'The dilemma faced by defendants like Garrett is most extreme in prosecutions for possessory crimes, for then the testimony required for standing itself proves an element of the offense. We eliminated that Hobson's choice in Jones v. United States, *supra*, by relaxing the standing requirements. This Court has never considered squarely the question whether defendants charged with non-possessory crimes, like Garrett, are entitled to be relieved of their dilemma entirely.' It was to this latter question that *Simmons* directed itself, not the right of one charged, as this defendant was, with a possessory crime. See, also, Mancusi v. De Forte (1968) 392 U.S. 364, 368, n. 5,

88 S.Ct. 2120, 20 L.Ed.2d 1154. Finally, *Jones* was not based simply on the reasoning that it was impermissible that the defendant be required to confess an essential element of guilt in order to invoke his constitutional rights under the Fourth Amendment. The Court stated that it was persuaded to its conclusion in favor of a right to challenge the search without 'a preliminary showing of an interest in the premises searched or the property seized' in a possessory crime by the consideration that 'to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. * * * It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government.' 362 U.S., pp. 263-264, 80 S.Ct., p. 732. That reasoning applies squarely to this case, where the Government seeks to use the fruits of the search to convict the defendant but would deny him standing to challenge the search. *Jones* proceeded on the basis that such contradictory positions by the Government are not to be allowed.

"There is accordingly no merit in the contention by the Government that *Simmons* altered the rule in *Jones* which gives the defendant here standing to attack the search, despite his failure to assert a proprietary or possessory interest in either the vehicle searched or the contraband seized." *Id.* 432 F. 2d at 721-22.

Nothing in *Brown* indicates a contrary view.

We are persuaded that the better and the majority view is that Messrs. Duncan and Smith did have "automatic standing" in this case to protest the search and seizure. Accordingly, it will be necessary for the Court of Special

Appeals upon the remand to examine the proceedings to determine whether the search and seizure was proper.

> *Judgment of the Court of Special Appeals vacated; case remanded to that court for further proceedings consistent with this opinion; costs to be paid by the County Commissioners of Frederick County.*