# MICHAEL EMMETT GAHAN *v.* STATE OF MARYLAND

[No. 41, September Term, 1980.]

*Decided May 26, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Barry J. Diamond,* with whom was *Gerald A. Kroop* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 322 *infra.*

Michael Emmett Gahan first contends that seized narcotics were admitted into evidence against him at trial in violation of his rights under U. S. Const. Amend. IV. We shall hold to the contrary. In anticipation of that holding he asks that under Maryland Declaration of Rights, Art. 26 we accord him automatic standing to contend that the evidence was illegally seized as in *Jones v. United States,* 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), pertaining to the Fourth Amendment. (*Jones* has since been overruled by *United States v. Salvucci,* 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980).) We have never enunciated such a rule and we decline the invitation now. Hence, we shall affirm the judgment of the Circuit Court for Baltimore County.

## I

Gahan elected a court trial at which he was convicted of possession of a controlled dangerous substance (marijuana) in sufficient quantity to reasonably indicate an intent to distribute in violation of Maryland Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) Art. 27, § 286.

The facts are gleaned from an agreed statement of facts printed in Gahan's brief pursuant to Maryland Rule 826 e. They may be briefly stated.

A member of the narcotics squad of the Baltimore County Police force was requested by an agent of the Federal Drug Enforcement Administration to participate in a surveillance which had begun earlier in the afternoon of July 13, 1978.

The detective was advised by the agent that an informant had told him that Gahan, Dean Messick, and another individual, then known only as "Bill," were involved in the transportation of marijuana; that Messick and Bill would bring the marijuana into Maryland via a truck or camper-type vehicle with North Carolina license plates; and that the marijuana was to be packaged in large cardboard boxes with the brand name of a nationally known cigarette stamped on them.

A vehicle with Florida license plates was parked near Gahan's apartment when the surveillance was begun. A check relative to its registration disclosed that it was titled in Messick's name. Thereafter the Federal agent observed a camper vehicle with North Carolina license plates drive near where Gahan resided. Efforts to follow it failed. About fifteen minutes after the latter observation an individual, later identified as Gahan, was seen to leave an apartment in the area where Gahan resided and to enter the Messick vehicle. He was followed to a Baltimore County residence. A camper-type vehicle with North Carolina tags was observed near there. Three individuals, later identitied, one of whom was Gahan, were observed removing the camper attachment from the truck. They were then seen carrying large boxes from the rear of the Messick vehicle to the camper attachment and from the camper attachment into the residence. The officers noticed one such box being placed into the Messick vehicle. Messick and Gahan then left the residence in Messick's car. They were followed by the other individual who was driving the truck from which the camper attachment had been removed.

Less than an hour later the suspects were stopped. All were arrested. Messick was chosen by the Federal agent as the individual most likely to cooperate with the police. The officers claimed that Messick advised them that he had control of the camper and that he received the permission of the owner to use it. They asserted that Messick consented to a search of the camper, a fact which Messick later denied.

A search warrant for the residence and the camper was

sought from and denied by a District Court judge.[1] Thereafter, the officers broke into the camper from which they seized over 500 pounds of marijuana.

Gahan and Messick moved to suppress the evidence seized. Gahan testified. Messick's motion to suppress was granted, but Gahan's was denied. The trial judge (Hormes, J.), in ruling on the motion to suppress, noted that "Gahan did not assert a property or a possessory interest in the camper or an interest in the property seized." Thus, he held that since Gahan had "not prove[d] to the Court that he had a reasonable expectation of privacy in the camper, he cannot claim that his own Fourth Amendment rights were violated by the alleged search and seizure." He said that *Rakas v. Illinois,* 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), "did away with the automatic standing rule of *Jones* even though the Court did not decide that particular question."

Gahan filed a timely appeal to the Court of Special Appeals. Prior to argument in that court he petitioned us for the writ of certiorari. In granting the writ we directed that argument to us should "include the question of the applicability of Art. 26 of the Maryland Declaration of Rights to this case . . . ."

The sole contention here is that the trial court erred in permitting admission of the evidence in question. Hence, the judgment must be affirmed unless we find a violation of the mandate in *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), as to U.S. Const. Amend. IV made applicable to the states through Amend. XIV, or violation of Maryland Declaration of Rights, Art. 26.

## II

We first address Gahan's rights under the United States Constitution because his first contention is that the trial

---

1. At oral agrument before us counsel for the State said she has consistently advised officers that when they think they have probable cause for obtention of a search warrant they should apply for such warrant even if they believe they have consent to search. She stated that she does this out

court erred in failing to find that he was denied his rights under that Constitution. He claims that he did in fact have automatic standing to challenge the legality of the search and seizure in this case and that he had a legitimate expectation of privacy in the area from which the marijuana was seized.

U. S. Const. Amend. IV provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In *Jones,* 362 U.S. 257, 258, Mr. Justice Frankfurter pointed out for the Court that the statutory provisions under which the accused was prosecuted permitted his conviction on one count upon a showing of his possession of the seized narcotics and on the other upon a showing of that possession and the absence of appropriate stamps. It said that while ordinarily it is proper to require one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy, that in a narcotics charge like that then before the Court where there could be conviction through proof solely of possession of the narcotics a defendant seeking to comply with the conventional standing requirement had been forced to allege facts the proof of which would tend to convict him. *Id.* at 261-62. The holding of *Jones* was twofold: (1) the alleged possession of an item on the basis of which the possession itself is sufficient to convict suffices to give an accused standing; and (2) anyone legitimately on premises where a search occurred may challenge its legality by way of a motion to suppress when

---

of an abundance of caution against the possibility that at a subsequent stage of the proceeding an individual may do as Messick did here, that is claim that he gave no consent or no valid consent for such a search.

its fruits are proposed to be used against him. This view that the first prong of *Jones* was so limited is reinforced by the statement of the Court in *Brown v. United States,* 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973). After referring to its decision in *Simmons v. United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), the Court in *Brown* said it was unnecessary to determine whether *Simmons* made *Jones'* "automatic standing" unnecessary, stating it "reserve[d] that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense . . . charged.'" *Id.* at 228.[2]

In *Simmons,* 390 U.S. 377, the Court viewed from a somewhat different posture a dilemma similar to that passed upon in *Jones.* There two individuals were convicted of armed robbery of a federally insured savings and loan association. Before trial one of the accused moved to suppress evidence seized at the home of his mother. In order to establish his standing, he testified that although he could not identify the suitcase with certainty, it was similar to the one he had owned and that he was the owner of the clothing found inside the suitcase. His motion to suppress was denied. His testimony at the suppression hearing was used against

---

**2.** In *Salvucci* the Supreme Court said:

[3] In *Brown v. United States,* 411 U.S. 223, 229 (1973), this Court clarified that the automatic standing rule of *Jones* was applicable only where the offense charged "possession of the seized evidence at the time of the contested search and seizure." [*Id.* 448 U.S. at 87.]

Although we are of the view that we have correctly stated the holdings of *Jones,* there is no denying that some courts and some people have seen the first prong as going beyond what we have stated. For instance, *McCormick on Evidence* § 179 at 421 (2d ed. Cleary 1972), after quoting from *Jones* and its automatic standing rule, states, "It is clear that this aspect of standing applies not only to charges of possession of contraband *per se,* but also to items whose possession is not inherently illegal but is so under the circumstances charged," citing Niro v. United States, 388 F.2d 535 (1st Cir. 1968), where a defendant was charged with knowing possession of stolen goods that had been transported in interstate commerce and he was held entitled to automatic standing, and Simpson v. United States, 346 F.2d 291 (10th Cir. 1965), where the automatic standing rule was applied to one charged with unlawful possession of an automobile transported in interstate commerce. See also Grove, *Suppression of Illegally Obtained Evidence: The Standing Requirement On Its Last Leg,* 18 Cath. U.L. Rev. 150, 159-61 (1968).

him at trial. He contended that his constitutional rights were violated when testimony given by him in support of his motion to suppress was so used. The Court held, "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.* 390 U.S. at 394.

In *Duncan and Smith v. State,* 276 Md. 715, 351 A.2d 144 (1976), we reviewed the holding of the Court of Special Appeals in *Duncan and Smith v. State,* 27 Md. App. 302, 317, 340 A.2d 722 (1975), to the effect "that the 'automatic standing' notion of . . . *Jones"* did not apply "primarily because of [that court's] considered belief that the very concept of 'automatic standing' ha[d] been superseded and rendered a dead letter by *Simmons* . . . ." We found "that the majority of courts regard[ed] [*Jones*] as viable notwithstanding the fact that there ha[d] been no recent pronouncement from the Supreme Court." *Id.* at 730-31. Although at that time we believed the view which we took of the matter was correct, subsequent events have proven the Court of Special Appeals to be right in its long range view that *Jones* is "a dead letter," at least in cases based upon the holdings of the Supreme Court applying its exclusionary rule under *Weeks v. United States,* 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914), and *Mapp.*[3]

In *Rakas,* 439 U.S. 128, two individuals were convicted of armed robbery. They were not the owners of a vehicle from which a sawed off rifle and rifle shells admitted into evidence against them were seized nor did they ever assert ownership of the rifle or shells. The Court rejected the "target" rule or theory advanced by them, holding "that the phrase 'legitimately on premises' coined in *Jones* creates too broad a gauge for measurement of Fourth Amendment

---

**3.** In Duncan and Smith v. State, 276 Md. 715, 351 A.2d 144 (1976), we concerned ourselves with the concept of automatic standing because that was the question framed in the petition for certiorari. We point out, however, that the accused in that case were charged with grand larceny and with receiving stolen goods. They did not come within the first prong of *Jones* where the showing of possession would in itself, without more, be sufficient to convict of a crime.

rights." *Id.* at 142. It said "that *Jones* on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Id.* at 142. Mr. Justice Rehnquist further said for the Court:

> [P]etitioners' claims must fail. They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact that they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched. [*Id.* at 148.]

Further light is shed by the observation by Mr. Justice Powell in a concurring opinion, in which the Chief Justice joined, "I read the Court's opinion as focusing on whether there was a *legitimate* expectation of privacy protected by the Fourth Amendment." *Id.* at 150. (Emphasis in original.)

In *Salvucci,* 448 U.S. 83, the Court concluded the first paragraph of its opinion by stating:

> Today we hold that defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated. The automatic standing rule of *Jones v. United States, supra,* is therefore overruled. [*Id.* 448 U.S. at 85.]

Each of the accused there was charged with unlawful possession of stolen mail. The evidence in question had been seized in a search pursuant to warrant of an apartment rented by the mother of one of the accused. The trial court granted a motion to suppress on the ground that the affidavit supporting the application for the search warrant was inadequate to demonstrate probable cause. The Government opposed the motion in the trial court and on appeal on the

ground that the accused lacked standing to challenge the constitutionality of the search. In the course of its opinion the Court pointed out "that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. *Simmons v. United States,* 380 U.S. 377 (1968)." *Id.* 448 U.S. at 88. It said that *Rakas* and other decisions "clearly establish that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction." *Id.* 448 U.S. at 90. It stated, referring to its decision of the same day in *Rawlings v. Kentucky,* 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980), "[L]egal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest for it does not invariably represent the protected Fourth Amendment interest." *Id.* 448 U.S. at 91. It added, "We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." *Id* 448 U.S. at 92. It then went on "[a]s in *Rakas"* to "again reject 'blind adherence' to the other underlying assumption in *Jones* that possession of the seized good is an acceptable measure of Fourth Amendment interests." *Id.* 448 U.S. at 92. It held, "[N]either prosecutorial 'vice,' nor the underlying assumption of *Jones* that possession of a seized good is the equivalent of Fourth Amendment 'standing' to challenge the search, can save the automatic standing rule." *Id.* 448 U.S. at 93. The Court said it was "convinced that the automatic standing rule of *Jones* has outlived its usefulness in th[e] [Supreme] Court's Fourth Amendment jurisprudence." It then stated, "The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment Rights have *not* been violated." *Id.* 448 U.S. at 95. (Emphasis in the original.)

It follows, therefore, that under the holdings of the United States Supreme Court in *Rakas* and *Salvucci* the trial judge did not err in his determination that under the facts and circumstances of this case Gahan did not have automatic standing to mount a challenge to the seizure under the

Fourth Amendment and that he failed to establish a legitimate expectation of privacy in the area searched.

### III

Having found no violation under the Fourth Amendment, we next turn to an examination of our own Declaration of Rights, Art. 26. It is older than the Fourth Amendment and it has appeared in virtually the same language in each of our constitutions since 1776. It states:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

This provision is said by A. Niles, *Maryland Constitutional Law* 50 (1915), to be "very similar in its verbiage to the 4th Amendment to the Federal Constitution, and is included in Class C," referring to the author's classification of the articles of our Declaration of Rights into four classes. On the subject of "Class C" Judge Niles observed:

> These articles are, of course, of great importance. In regard to their construction, the decisions of the United States [Supreme] Court, in reference to the corresponding provisions of the Federal Constitution, are adopted by our court as authority which is very persuasive, although not necessarily controlling. The Federal constitutional law, therefore, construing these articles of the Federal Constitution is pertinent upon the construction of articles of this class in our State Declaration of Rights. [*Id.* at 13.]

This Court has said many times that Art. 26 is in pari materia with the Fourth Amendment. See, e.g., *Liichow v. State,* 288 Md. 502, 509, n. 1, 419 A.2d 1041 (1980); *Merrick*

*v. State,* 283 Md. 1, 4, n. 2, 389 A.2d 328 (1978); *Givner v. State,* 210 Md. 484, 492, 124 A.2d 764 (1956); *Blum v. State,* 94 Md. 375, 382, 51 A. 26 (1902), and cases cited in each. Chief Judge Brune observed for the Court in *Givner,* "Though it antedates the Fourth Amendment by some years both grew out of the same historical background, which has been traced many times." (Citing cases.) *Id.* He further stated for the Court:

> Though the Fourth Amendment is not binding upon the States, this Court, in *Lambert v. State,* 196 Md. 57, at 62, 75 A.2d 327, at 329, has recognized that in considering our own Constitution and statutes relating to the subject of unlawful searches and the admissibility of evidence thereby obtained, "decisions of the Supreme Court on the kindred 4th Amendment are entitled to great respect." [*Id.* at 498.]

It is suggested that our opinion in *Duncan and Smith,* 276 Md. 715, should lead us to hold that Gahan has standing under our Declaration of Rights to challenge the search and seizure here. This contention in part focuses on the statement by the author of this opinion for the Court there:

> If on a motion to suppress ... persons such as Duncan and Smith were obliged to go no further than to merely assert that they owned the goods, then after *Simmons* there might be no need for *Jones.* Such is not the case, however. On a motion to suppress ... an alert prosecutor might well elicit from persons in the position of Duncan and Smith small bits of information from which he could well develop the basis for additional investigation calculated to make the State's case stronger. This represents one of the very vices *Jones* was intended to prevent. The Supreme Court itself has not said *Jones* is "a dead letter." [*Id.* at 730.]

We were there engaged in a determination under the mandated application of the Fourth Amendment to the

states. The objection there was to the admission into evidence of allegedly stolen items removed from the trunk of an automobile claimed to have been in the possession of the defendants. The sole issue was whether the Court of Special Appeals had erred in determining that *Jones*, 362 U.S. 257, was no longer controlling and that the petitioners by relying upon the rule of automatic standing had failed to show that they did indeed have standing to challenge the legality of the search of the automobile and seizure of evidence from it used against them at trial. *Id.* at 716. Since we there determined that as of that time *Jones* was not "a dead letter" and thus that the accused had standing to challenge the search and seizure, we remanded the case to the Court of Special Appeals to examine the proceedings to determine whether the search and seizure was proper. *Id.* at 732-33.[4] The language used in that opinion, however others may choose to interpret it, was meant only to be an expression of what we understood the law to be as mandated by the Supreme Court. It neither addressed nor was concerned with our own Declaration of Rights.

At no time has this Court adopted a concept of automatic standing under Maryland Declaration of Rights, Art. 26.

## IV

As we have earlier observed, our cases clearly recognize the similarity between the Fourth Amendment to the Constitution of the United States and our own older Declaration of Rights, Art. 26, which grew out of the same historical background. Because of this similarity the consistent position of this Court has been that "decisions of the Supreme Court on the kindred 4th Amendment are entitled to great respect." See *Givner,* 210 Md. at 498

---

4. When the case was again before us in Duncan and Smith v. State, 281 Md. 247, 378 A.2d 1108 (1977), we determined that the vehicle had been abandoned and thus that it "m[ight] be seized by the police without a warrant and examined with no limitations on the scope, intensity, or objectives of the examination" and that "[i]t and its contents m[ight] be retained for use as evidence otherwise admissible against the one who abandoned it." *Id.* at 263.

quoting from *Lambert,* 196 Md. at 62. As long ago as 1915 Judge Niles in the work he prepared for use at the University of Maryland School of Law was saying that Art. 26 came within the group within our Declaration of Rights where the decisions of the Supreme Court on corresponding provisions of the federal constitution "are adopted by our court as authority which is very persuasive, although not necessarily controlling." *Op. cit.* at 13. Of course, as Judge Digges said for the Court recently in a slightly different context in *Attorney General v. Waldron,* 289 Md. 683, 714, 426 A.2d 929 (1981), although a clause of the United States Constitution and one in our Declaration of Rights may be "in pari materia," and thus "decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is independent, and a violation of one is not necessarily a violation of the other." What the Supreme Court said in *Salvucci* and *Rawlings,* a case which did involve an alleged narcotics violation, is closely similar to the prior statements of this Court. We now hold in accordance with *Salvucci* that one who seeks under Art. 26 to challenge the validity of a search and seizure must establish that his own rights have in fact been violated. As the Supreme Court put it in *Rawlings,* there is but one inquiry to be made, "whether governmental officials violated any legitimate expectation of privacy held by [the accused]." *Id.* 448 U.S. at 106. The findings of the trial judge as to a lack of an expectation of privacy under the Fourth Amendment are equally applicable to alleged violation of Maryland Declaration of Rights, Art. 26. Hence, we find no error.

> *Judgment affirmed; appellant to pay the costs.*

*Davidson, J., dissenting:*

I agree with the majority that the Supreme Court's decision in *United States v. Salvucci,* 448 U.S. 83, 100 S. Ct. 2547 (1980), overruled the "automatic standing" holding of

*Jones v. United States,* 362 U.S. 257, 80 S. Ct. 725 (1960), and that, consequently, under the Fourth Amendment to the United States Constitution, the petitioner had no "automatic standing" to challenge the search and seizure here. I further agree that the petitioner failed to show a sufficient interest in the premises searched to have standing under the Fourth Amendment in accordance with the alternative holding of *Jones,* as modified by *Rakas v. Illinois,* 439 U.S. 128, 99 S. Ct. 421 (1978), that an accused has standing if he shows a legitimate expectation of privacy in the premises where a search occurs. I, therefore, agree with the majority that the petitioner is not entitled to relief under the Fourth Amendment to the United States Constitution.

I disagree with the majority's holding that the petitioner lacks "automatic standing" to challenge the search and seizure under Art. 26 of the Maryland Declaration of Rights. In my view, the rationale underlying this Court's decision in *Duncan and Smith v. State,* 276 Md. 715, 730-32, 351 A.2d 144, 152-53 (1976), remains sound and dictates that the petitioner should be afforded "automatic standing" under Art. 26 and Md. Rule 736. Accordingly, I respectfully dissent.

In *Jones,* an accused was charged with possessing narcotics taken from a window awning in an apartment in which he was an invited guest. The Supreme Court indicated that the accused was charged with possessory offenses and that "[p]ossession was the basis of the Government's case against petitioner." 362 U.S. at 258, 80 S. Ct. at 730. That Court acknowledged that ordinarily an accused has standing to challenge a search and seizure only if his own Fourth Amendment rights allegedly were violated. The Supreme Court recognized that traditionally courts have applied two alternate standards to determine whether an accused had standing and stated that courts "have generally required that the movant claim either to have owned or possessed the seized property *or* to have had a substantial possessory interest in the premises searched." 362 U.S. at 261, 80 S. Ct. at 731 (emphasis added).

The Supreme Court then identified two dilemmas presented when traditional standing concepts were applied to possessory offenses. With respect to the first dilemma, the danger of self-incrimination, it said:

> "Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, although that they may is by no means an inevitable holding, but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession." 362 U.S. at 261-62, 80 S. Ct. at 731.

With respect to the second dilemma, the inconsistency of the prosecution's position, the Supreme Court said:

> "[T]o hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not

consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements...." 362 U.S. at 263-64, 80 S. Ct. at 732.

The Supreme Court then formulated an "automatic standing" rule for possessory offenses. It said:

"The same element in this prosecution which has caused a dilemma, i.e., that possession both convicts and confers standing, *eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized,* which ordinarily is required when standing is challenged." 362 U.S. at 263, 80 S. Ct. at 732 (emphasis added).

Thus, the Supreme Court established the rule that in cases involving possessory offenses, an accused need not affirmatively establish a possessory interest in the property seized or the premises searched in order to obtain standing. Rather, the possession of the property seized affords the accused "automatic standing." The Supreme Court held that this newly-formulated "automatic standing" rule for possessory offenses served as "the first ground" for sustaining Jones's standing.

The Supreme Court then considered an entirely separate, alternate ground for sustaining Jones's standing. It formulated a new standard governing the extent of an accused's requisite interest in the premises. It said:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that *anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.* This would of course not avail those

who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established [the owner] Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated." 362 U.S. at 267, 80 S. Ct. at 734 (emphasis added).

In addition, it said:

"Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below." 362 U.S. at 263, 80 S. Ct. at 732.

Thus, the Supreme Court established the rule that an accused need not affirmatively establish that he had a substantial possessory interest in the premises searched in order to obtain standing. Rather, he had to establish affirmatively that he was legitimately on the premises where the search occurred in order to obtain standing. The Supreme Court held that this newly-formulated "legitimately on premises" principle served as the second alternate ground for sustaining Jones's standing. In sum, *Jones* established two alternate modifications to traditional standing requirements, the "automatic standing" principle and the "legitimately on premises" principle.

In *Simmons v. United States,* 390 U.S. 377, 88 S. Ct. 967 (1968), the Supreme Court again considered the question of standing. It recognized that even though a nonpossessory offense was involved, the danger of self-incrimination existed because an accused could give testimony necessary to make a Fourth Amendment claim "only by assuming the risk that the testimony would later be admitted against him at trial." 390 U.S. at 391, 88 S. Ct. at 975. To eliminate this dilemma, the Supreme Court held "that when a defendant testified in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of

guilt unless he makes no objection." 390 U.S. at 394, 88 S. Ct. at 976.

In *Brown v. United States,* 411 U.S. 223, 93 S. Ct. 1565 (1973), the Supreme Court once again considered the question of standing. *Brown,* like *Simmons,* involved a nonpossessory offense. Although the Supreme Court held that the "automatic standing" principle of *Jones* was inapplicable, it expressly declined to overrule this principle. In addition, the Supreme Court noted that the self-incrimination dilemma, one of the two underlying rationales for the "automatic standing" principle, had been resolved. There the Supreme Court said:

> "The self-incrimination dilemma, so central to the *Jones* decision, can no longer occur under the prevailing interpretation of the Constitution. Subsequent to *Jones,* in *Simmons v. United States, supra,* we held that a prosecutor may not use against a defendant at trial any testimony given by that defendant at a pretrial hearing to establish standing to move to suppress evidence. 390 U.S., at 389-394, 88 S.Ct., at 973-976. For example, under the *Simmons* doctrine the defendant is permitted to establish the requisite standing by claiming 'possession' of incriminating evidence. If he is granted standing on the basis of such evidence, he may then nonetheless press for its exclusion; but, whether he succeeds or fails to suppress the evidence, his testimony on that score is not directly admissible against him in the trial. Thus, petitioners in this case could have asserted, as to the pretrial suppression hearing, a possessory interest in the goods at Knuckles' store without any danger of incriminating themselves. They did not do so." 411 U.S. at 228, 93 S. Ct. at 1568-69.

In *Duncan and Smith v. State,* 276 Md. 715, 351 A.2d 144 (1976), both prosecutions involved "possessory" offenses governed by the "automatic standing" principle of *Jones.*

This Court, fully cognizant of *Simmons* and *Brown,* held that "Messrs. Duncan and Smith did have 'automatic standing' in this case to protest the search and seizure." 276 Md. at 732, 351 A.2d at 153.

The initial rationale offered to support this conclusion was that the Supreme Court in *Brown* had expressly declined to overruled the "automatic standing" principle and that courts in other jurisdictions had held that that principle was still viable. Of course, this rationale is no longer sound because *Salvucci* overruled the "automatic standing" principle of *Jones.*

This Court, however, offered a second rationale to support its conclusion. It reasoned that despite the language in *Brown,* the holding in *Simmons* did not completely resolve the self-incrimination dilemma in a case involving a possessory offense. In *Duncan and Smith,* Judge Smith stated for a unanimous Court:

> "If on a motion to suppress testimony persons such as Duncan and Smith were obliged to go no further than to merely assert that they owned the goods, then after *Simmons* there might be no need for *Jones.* Such is not the case, however. On a motion to suppress testimony an alert prosecutor might well elicit from persons in the position of Duncan and Smith small bits of information from which he could well develop the basis for additional investigation calculated to make the State's case stronger. This represents one of the very vices *Jones* was intended to prevent. . . ." 276 Md. at 730, 351 A.2d at 152.

Thus, this Court concluded that there was still a "need" for "automatic standing" in cases involving possessory offenses, pointing out that not only was "automatic standing" the majority view, but it was also the "better" view. 276 Md. at 732, 351 A.2d at 153. In my opinion, this rationale for adhering to the "automatic standing" principle is sound.

Nothing in the Supreme Court's decisions in *Rakas, Salvucci,* and *Rawlings v. Kentucky,* 448 U.S. 98, 100 S. Ct. 2556 (1980), vitiates the rationale in *Duncan and Smith.* In *Rakas,* which concerned a nonpossessory offense, the Supreme Court stated that the alternate holding of *Jones,* which established the "legitimately on premises" principle, was too broad. Accordingly, the Supreme Court limited this alternate basis for standing to situations in which an accused "had a legitimate expectation of privacy in the premises."

While *Rakas* modified the "legitimately on premises" principle, it had no effect on the "automatic standing" principle of *Jones.* Thus, after *Rakas,* there remained two separate modifications to traditional standing requirements. In cases involving possessory offenses, an accused had "automatic standing" derived from his possession of the seized property. Alternatively, an accused had standing if he affirmatively established that he had a "legitimate expectation of privacy in the premises."

*Salvucci* and *Rawlings,* both of which involved possessory offenses, again modified these alternate requirements. In *Salvucci,* the Supreme Court said:

> "We simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." 448 U.S. at 91, 100 S. Ct. at 2553.

Thus, the Supreme Court resolved the second dilemma identified in *Jones* concerning the inconsistency of the prosecutor's positions by eliminating possession of the property seized as a basis for standing in cases involving possessory offenses. Once possession of the property seized is rejected as a basis for standing, this inconsistency disappears.

With respect to the self-incrimination dilemma of *Jones,* the Supreme Court reiterated its statement in *Brown* that, in light of *Simmons,* " '[t]he self-incrimination dilemma, so central to the *Jones* decision, can no longer occur.' " 448 U.S.

at 89, 100 S. Ct. at 2552. The Supreme Court did not consider the rationale relied upon in *Duncan and Smith* that in a case involving a possessory offense, the self-incrimination dilemma was not completely resolved.

Thus, *Salvucci* abolished the "automatic standing" principle of *Jones.* In order to have standing, in cases involving possessory offenses, an accused must affirmatively establish that he had a "legitimate expectation of privacy in the premises."

Justice Marshall joined by Justice Brennan dissented. Their underlying rationale, that *Simmons* did not fully resolve the self-incrimination dilemma, was identical to this Court's rationale in *Duncan and Smith.* There, Justice Marshall said:

> "I cannot agree that *Simmons* provides complete protection against the 'self-incrimination dilemma,' *Brown v. United States,* 411 U.S. 223, 228, 93 S.Ct. 1565, 1568, 36 L.Ed.2d 208 (1973). Respondents contend that the testimony given at the suppression hearing might be held admissible for impeachment purposes and, while acknowledging that that question is not before us in this case, the majority broadly hints that this is so. *Ante,* at 2554, n.9; see *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971); *United States v. Kahan,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974); *United States v. Havens,* 446 U.S. 620, 100 S. Ct. 1912, 64 L.Ed.2d 559 (1980); *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L. Ed.2d 86 (1980); but see *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). The use of the testimony for impeachment purposes would subject a defendant to precisely the same dilemma, unless he was prepared to relinquish his constitutional right to testify in his own defense, and would thereby create a strong deterrent to asserting Fourth Amendment claims. One of the purposes of *Jones* and *Simmons* was to remove such obstacles.

See *Simmons, supra,* at 392-394, 88 S.Ct. at 975-976. Moreover, the opportunity for cross-examination at the suppression hearing may enable the prosecutor to elicit incriminating information beyond that offered on direct examination to establish the requisite Fourth Amendment interest. Even if such information could not be introduced at the subsequent trial, it might be helpful to the prosecution in developing the case or deciding its trial strategy. The furnishing of such a tactical advantage to the prosecution should not be the price of asserting a Fourth Amendment claim. *Simmons,* therefore, does not eliminate the possibility that a defendant will be deterred from presenting a Fourth Amendment claim because of 'the risk that the words which he utters may later be used to incriminate him.' *Simmons, supra,* at 393, 88 S.Ct., at 976. Accordingly, I conclude that this part of the reasoning in *Jones* remains viable." 448 U.S. at 95-97, 100 S. Ct. at 2555-56.

Accordingly, these two Justices, like this Court in *Duncan and Smith,* concluded that there was still a need for "automatic standing" in cases involving possessory offenses. In my view, because the decisions in *Rakas, Salvucci* and *Rawlings* did not fully resolve the self-incrimination dilemma, this Court's rationale in *Duncan and Smith* for adhering to the "automatic standing" principle, in cases involving possessory offenses, remains sound.

I recognize that *Duncan and Smith* involved a question of standing under the Fourth Amendment. However, I cannot conclude, as does the majority, that this Court's rationale in *Duncan and Smith* is not equally sound when a search and seizure is challenged under Art. 26 of the Maryland Declaration of Rights.

I agree with the majority that "Art. 26 is in *pari materia* with the Fourth Amendment" and that in considering Art. 26, "decisions of the Supreme Court on the kindred Fourth

Amendment are entitled to great respect." *Givner v. State,* 210 Md. 484, 498, 124 A.2d 764, 771 (1956); *Lambert v. State,* 196 Md. 57, 62, 75 A.2d 327, 329 (1950). Nevertheless, the Fourth Amendment and Art. 26 are independent and capable of divergent effect. Although decisions of the Supreme Court are controlling when we interpret the Federal Constitution, they are only persuasive when we interpret the Maryland Declaration of Rights. *Attorney General of Md. v. Waldron,* 289 Md. 683, 705, 426 A.2d 929, 941 (1981); *Liichow v. State,* 288 Md. 502, 509 n.1, 419 A.2d 1041, 1044-45 n.1 (1980).

Under the circumstances here, I would adhere to this Court's rationale in *Duncan and Smith,* and I would hold that under Art. 26 of the Maryland Declaration of Rights in cases involving possessory offenses, an accused has "automatic standing" and is not required to establish affirmatively either a possessory interest in the property seized or a legitimate expectation of privacy in the premises searched in order to have standing to challenge a search and seizure. Because the petitioner here was charged with a possessory offense, he was entitled to "automatic standing." Accordingly, I would reverse and remand the case to the trial court in order to afford the petitioner an opportunity to challenge the legality of the search and seizure.