521 A.2d 749

**Tyrone TRUSTY**

**v.**

**STATE of Maryland.**

**No. 81, Sept. Term, 1986.**

Court of Appeals of Maryland.

March 4, 1987.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore City, for appellant.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

■ Heroin, cocaine, marijuana and drug paraphernalia were seized from Tyrone Trusty incident to a warrantless arrest. He was charged with various violations of the controlled dangerous substances laws. His conduct during the course of the arrest prompted additional charges of resisting arrest and assault on the arresting officer. The charges against him were filed in the Circuit Court for Baltimore City. He called upon the constitutional prohibitions against unreasonable searches and seizures.[1] He filed

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. The provision applies to state prosecutions through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Art. 26 of the Maryland Declaration of Rights, which declares that general warrants or warrants without oath or affirmation as authority to seize persons or property "are illegal, and ought not be granted," antedated the Fourth Amendment by some years. Although it does not contain an express declaration of the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures as does the Fourth Amendment, both grew out of the same historical background, and Art. 26 has been consistently said by this Court to be in *pari materia* with the Fourth Amendment. *Little v. State*, 300 Md. 485, 493 n. 3, 479 A.2d 903

a pretrial motion to suppress the evidence recovered from him on the ground that his arrest was illegal as lacking probable cause. Rule 4–252(a)(3). Therefore, he claimed, the seizure of the contraband was unlawful as in violation of his constitutional rights against unreasonable searches and seizures, and the exclusionary rule applied to suppress the evidence. He placed the burden on the State to prove that his constitutional rights had not been denied.[2] After a plenary hearing the trial court denied the motion. It found that there was "ample probable cause to support the search that followed."

At the ensuing trial on the merits the challenged evidence was placed before the jury. As there was no renewal of the motion and grant of a hearing de novo thereon, the previous ruling of the court was binding. Rule 4–252(g)(2). The jury convicted Trusty of all of the charges submitted to it—possession of heroin, cocaine, marijuana and drug para-

---

(1984); *Potts v. State,* 300 Md. 567, 576, 479 A.2d 1335 (1984); *Gahan v. State,* 290 Md. 310, 321, 430 A.2d 49 (1981); *Givner v. State,* 210 Md. 484, 492, 124 A.2d 764 (1956).

**2.** Warrantless Fourth Amendment intrusions are presumptively unreasonable, *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 and 222, 93 S.Ct. 2041, 2043 and 2045, 36 L.Ed.2d 854 (1973), and searches and seizures which are incident to an illegal arrest are necessarily unreasonable, *Stanley v. State,* 230 Md. 188, 192, 186 A.2d 478 (1962). If the arrest was unlawful, nothing that happens thereafter can justify a search and seizure as its incident. *Rios v. United States,* 364 U.S. 253, 261–262, 80 S.Ct. 1431, 1436, 4 L.Ed.2d 1688 (1960) and cases cited in *Stanley,* 230 Md. at 191, 186 A.2d 478.

For the authority to arrest without a warrant *see* Md.Code (1957, 1982 Repl.Vol., 1986 Cum.Supp.) Art. 27, § 594B and § 594C.

In a criminal prosecution the Fourth Amendment bars the use of evidence secured through an illegal search and seizure. *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914). *See Wolf v. Colorado,* 338 U.S. 25, 28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949).

The exclusionary rule is a potent judicial weapon fashioned to restrain police trespass on constitutionally protected rights, which is selectively used and discriminately applied. *Baker v. State,* 39 Md.App. 133, 141, 383 A.2d 698 (1978).

*See Stone v. Powell,* 428 U.S. 465, 490–491, 96 S.Ct. 3037, 3050–3051, 49 L.Ed.2d 1067 (1976).

phernalia, resisting arrest and the assault and battery of the arresting officer. Sentences were imposed.

## I

On direct appeal the Court of Special Appeals reversed the judgments entered on the convictions of the controlled dangerous substances laws. Upon its independent constitutional appraisal of the record of the hearing on the motion to suppress, it was unable to share the belief of the hearing court that the State had met its burden of establishing that the police had probable cause for the arrest.[3] After carefully reviewing the evidence produced at the hearing, the intermediate appellate court concluded: "[T]he State simply failed to prove affirmatively the foundation for [the arresting officer's] belief that he was witnessing a drug transaction." *Trusty v. State,* 67 Md.App. 620, 629, 508 A.2d 1018 (1986). It thought that the narcotic convictions "were clearly based on the introduction of the evidence, which we hold should have been suppressed...." *Id.* at 630, 508 A.2d 1018. Therefore, it reversed the judgments on those convictions. *Id.*

In the proceedings before us on Trusty's petition for a writ of certiorari to the Court of Special Appeals, the State does not challenge the reversal of the judgments on the narcotic charges. It concedes:

> [T]he Court of Special Appeals was entirely correct in ruling that the State had not met its burden of proving the existence of probable cause at the suppression hearing below. That court also properly reversed the drug convictions, finding that they were based upon the physi-

---

**3.** "A pretrial ruling denying the motion to suppress is reviewable ... on appeal of a conviction." Rule 4–252(g)(2).

On the duty of an appellate court to make an independent constitutional appraisal when a fundamental right is involved, *see Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Watson v. State,* 282 Md. 73, 84, 382 A.2d 574, *cert. denied,* 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978); *Parker v. State,* 66 Md.App. 1, 10–11, 502 A.2d 510, *cert. denied,* 306 Md. 70, 507 A.2d 184 (1986).

cal evidence which should have been suppressed. (footnote omitted)

Thus, the propriety of the judgment of the Court of Special Appeals with respect to the narcotics offenses is not before us and that judgment stands as rendered. We, therefore, affirm the judgment of the Court of Special Appeals which reversed the "judgments [entered by the Circuit Court for Baltimore City] of conviction of possession of heroin, cocaine, marijuana and paraphernalia...." Rule 813 a.

## II

### (A)

On direct appeal the Court of Special Appeals affirmed the trial court's "judgments for conviction of assault and resisting arrest...." Trusty sought to have the intermediate appellate court review the sufficiency of the evidence to sustain these convictions. He presented the question: "Did the lower court err by denying [his] motion for judgments of acquittal because the evidence was insufficient?" *See Brooks v. State,* 299 Md. 146, 156–157, 472 A.2d 981 (1984); *Gray v. State,* 254 Md. 385, 387–388 and 393, 255 A.2d 5 (1969), *cert. denied,* 397 U.S. 944, 90 S.Ct. 961, 25 L.Ed.2d 126 (1970). He contended that his warrantless arrest was unlawful as not based on probable cause and that "a person may legally resist an unlawful arrest even with force." Absent a valid arrest, he argued, the evidence was insufficient to sustain the convictions of resisting arrest and assault on the arresting officer. The Court of Special Appeals found no error in the denial of the motion for judgment of acquittal, but it did so on procedural grounds. It refused to address the matter of the sufficiency of the evidence. It said that Trusty, in moving for judgment of acquittal, had failed to comply with Rule 4–324(a) in that he did not state with particularity the reasons why the motion should be granted. 67 Md.App. at 630, 508 A.2d 1018. As "such articulation" is expressly required, the intermediate appellate court declared, "we

may not consider this issue on appeal." *Id. See State v. Lyles*, 308 Md. 129, 135, 517 A.2d 761 (1986).

In Trusty's petition for the writ of certiorari granted by us,[4] the main thrust of his attack on the challenged judgments bypassed the question whether the evidence before the jury met the test for sufficiency to sustain the convictions. He asked:

> Was the affirmance of the Court of Special Appeals of [the] convictions for assault and resisting arrest erroneous in light of that court's ruling that the trial court had erred in finding that [his] arrest was legal?

As we have seen, the Court of Special Appeals ruled, and the State acknowledges, that the trial court erred in denying the motion to suppress the evidence seized from Trusty incident to his arrest. Had the trial court granted the motion as the Court of Special Appeals determined it should have done, the judicial sanction of exclusion of the evidence and our Rule which implements that sanction would have barred the use of the challenged evidence in the prosecution of Trusty.[5] As we have also seen, under the authority of its erroneous pretrial ruling, the trial court permitted the evidence to be submitted to the jury in the State's case in chief. Given the error, the question is what are the consequences?

From opening statement to closing argument the prosecution took full advantage of the denial of the motion to suppress. In the opening statement the State stressed that it would prove that heroin, cocaine and marijuana were found on Trusty's person. It told the jury that it would "see pictures of everything that was recovered from the person of Tyrone Trusty." It emphasized that chemical

---

**4.** We denied a petition for a writ of certiorari filed by Trusty in proper person.

**5.** "If the court grants a motion to suppress evidence, the evidence shall not be offered by the State at trial, except that suppressed evidence may be used in accordance with law for impeachment purposes." Rule 4–252(g)(2).

analysis established that the substances seized were the named narcotic drugs. This was all in the light of assertions that the arresting officer would testify that he observed Trusty passing to another person what the officer believed from his experience and training—"he's had 600 narcotic arrests, 300 involving marijuana"—were narcotics. The State then proceeded to prove what it had told the jury it would prove. The arresting officer testified that after observing Trusty on the street make what the officer believed was a deal for narcotics, he approached Trusty, identified himself as a police officer, and told Trusty that he was under arrest. Trusty fled. The officer pursued him, finally caught him, and after a struggle, subdued him with the assistance of fellow officers. Trusty was taken into custody and searched, although still resisting. The officer told the jury:

> [In his] left hand he had six glassine bags containing a white powder which was analyzed and found to be heroin. Also after recovering those items, Mr. Trusty had another glassine bag which was inside of his wallet. That, too having a white powder substance, suspected heroin and he had gelatin capsules with white powder substances in it, which was suspected to be cocaine, in his pants pocket.

The officer said that a common packaging method for cocaine was gelatin capsules and for heroin, clear little plastic bags. In brown manila bags, which had fallen to the ground from Trusty's hand, were green-brown leaves suspected to be marijuana. A spoon, commonly used in connection with certain narcotics, was also found. Photographs of all the contraband seized were handed to the jury. An officer who had assisted in the apprehension of Trusty also described in fine detail what had been seized from Trusty. At the request of the prosecutor, he identified to the jury each item he described through its photograph. There was evidence by way of stipulation that a chemist who was "an expert in laboratory analysis of suspected drugs" had analyzed the substances seized and that they were heroin, cocaine and marijuana.

In the charge to the jury the court said that "possession of heroin, possession of cocaine, possession of marijuana, possession of paraphernalia ... is an offense, criminal offense...." He continued, "I instruct you that they are designated by law as controlled dangerous substances, and, two, that [Trusty's] possession was not authorized by law." He described "possession" as "the act or condition of having on one's person or taking into one's control." He told the jury that paraphernalia included "items of personal property which are used in connection with drugs" and that such items "[c]ould be, in our case ... the little ... glassine bags, the brown paper bags ..., the five manila envelopes and various of the measuring spoon.... These items are considered paraphernalia to be used in either administering or the packaging of the controlled dangerous substances." He concluded: "Now, as I told you, it is an offense, criminal offense to possess these items in a manner in which I have just described to you."

All of this led to an instruction on assault, which the judge noted was on the officer who was involved in the arrest, and to an instruction on resisting arrest. As to the latter, he explained that "resistance to a lawful arrest is a criminal offense." He observed:

[T]he State must prove beyond a reasonable doubt, one, that there was an arrest of the Defendant, the arrest was lawful, there was a refusal to submit to the arrest by the Defendant, there was resistance to an officer of the law in the performance of his duties, and the officer had identified himself as such.

In the prosecutor's opening argument to the jury he characterized heroin, cocaine and marijuana as "poison" and asserted: "We all know the misery that narcotics cause in our City and our nation." He declared:

Now the first three charges, possession of heroin, cocaine and marijuana, is a proven, given fact because you will be able to take this piece of paper up with you to the jury room and this will describe the items in these photographs and it will describe the analysis by an expert in

that field in the Baltimore City Police Department. You will see that item one right here, these six packages that Tyrone Trusty had on his person, was heroin. You will see that item two, one glassine bag which was found in Tyrone Trusty's wallet, was heroin. Item number three, one clear capsule containing a residue, cocaine.

He referred the jury to other photographs of capsules containing cocaine. He emphasized:

Tyrone Trusty had marijuana. He had cocaine. He had heroin on his person. He was running a drug store.

He suggested: "You may use your common sense to figure out why Mr. Trusty ran with the paper bag containing all of this poison." He stressed that when Trusty was apprehended the police found "even more drugs, more narcotics" on his person. He pounded on the fact that Trusty had in his possession heroin, cocaine, marijuana and paraphernalia. He exclaimed:

Tyrone Trusty had three types of poison on him that day.... He resisted arrest and assaulted a police officer of the Baltimore City Police Department.

It is clear that the prosecutor was attempting to convey to the jury that the seized contraband and the resisting arrest and assault crimes were directly connected. In closing argument he made it plain. He asked the jury to "use [your] common sense as to why Tyrone Trusty fled," and he suggested that the answer was: "It's because he had all these substances on him." He summed it up:

The law is if someone possesses these three substances and paraphernalia, if they in fact initiated bodily contact like an assault as Tyrone Trusty did on a police officer and, in fact, he did resist arrest, he is guilty of these crimes.

He concluded by declaring that "the evidence the State has given you has been overwhelming." He asked the jury to do its duty and "that is to return a verdict of guilty to all six charges." The jury did so in less than an hour and a

half, including time to return to the courtroom during its deliberations to ask a question.

(B)

The Supreme Court of the United States has recognized that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).[6] In light of this we fashioned a test for the determination of a harmless error:

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976).

We explained in *Ross v. State*, 276 Md. 664, 674, 350 A.2d 680 (1976):

> The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that

---

**6.** This Court does not draw a distinction "between the treatment of those errors which are of constitutional dimension and those other evidentiary, or procedural, errors which may have been committed during a trial." *Dorsey v. State*, 276 Md. 638, 657, 350 A.2d 665 (1976). "Regardless of the generic nature of the error, we believe that upon appellate review, a uniform test should be applied in all criminal cases to determine the effect the error may have had on the verdict." *Id.* at 658, 350 A.2d 665.

the decision of the finder of fact would have been different had the tainted evidence been excluded.

"[T]he burden of demonstrating the innocuous nature of an erroneous ruling is upon the State as the beneficiary of the transgression." *Hillard v. State,* 286 Md. 145, 155, 406 A.2d 415 (1979).

### (C)

■ The erroneously admitted evidence in this case permeated the entire proceedings. It was the heart of the prosecution and from it flowed the lifeblood of the State's case. It gave credence to the officer's belief that he observed Trusty in the course of a drug transaction. It provided an explanation why Trusty fled when the officer approached and identified himself as a policeman. It furnished a sound reason why Trusty fought being taken into custody when apprehended, to the point of requiring the assistance of other officers to subdue him, and committing assault and battery. It gave good cause why Trusty so strenuously resisted being searched incident to his arrest. It established that his conduct was not even arguably consistent with that of an innocent citizen attempting to protect himself from unwarranted intrusions by the police on his constitutionally guaranteed rights. In short, there is simply no reasonable possibility that the decision of the jury would have been the same had the tainted evidence been excluded. We have applied our test and conclude as follows. Trusty has established error. Upon our own independent review of the record, we are unable to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdicts. We are satisfied that there is a reasonable possibility that the erroneously admitted evidence may have contributed to the rendition of the guilty verdicts. Therefore, the error in admitting the evidence seized from Trusty incident to his arrest cannot be deemed "harmless." It follows that the answer to Trusty's question presented in his petition for certiorari, and accepted by us, is that the affirmance of the Court of Special Appeals of

the convictions for assault and resisting arrest was errone-
ous in light of that court's ruling that the trial court had
erred in finding that his arrest was legal.[7] The conse-
quences of the harmful error in denying the motion to
suppress and admitting the challenged evidence is that
reversal of the assault and resisting arrest convictions is
mandated.

■ As we have seen, the ruling of the court denying the
motion to suppress was binding at the trial, there being no
motion to renew it and no hearing de novo thereon. Rule
4–252(g)(2). The State suggests that at the trial on the
merits however, the prosecutor fleshed out the proof of
probable cause which he had skeletonized at the suppres-
sion hearing and established that the police officer did in
fact have probable cause to arrest Trusty. If so, this proof
came too late, of course, to cure the deficiency at the
pretrial hearing.

In determining whether the denial of a motion to sup-
press ... is correct, the appellate court looks to the
record of the suppression hearing, and does not consider
the record of the trial itself. *Jackson v. State,* 52 Md.

---

7. In answering this question we note that it is the propriety of the
judgment of the Court of Special Appeals affirming the conviction for
resisting arrest and assault that we consider, not its opinion setting
out the reasons for its action. *See Adm'r, Motor Veh. Adm. v. Vogt,*
267 Md. 660, 665, 299 A.2d 1 (1973); *McCann v. McGinnis,* 257 Md.
499, 505, 263 A.2d 536 (1970); *Mattingly v. Houston,* 252 Md. 590, 593,
250 A.2d 633 (1969).

Before us the State begs the question we believe is determinative.
Instead, it looks to the sufficiency of the evidence to sustain the
resisting arrest and assault convictions and, following the lead of the
Court of Special Appeals, urges that the issue was not preserved for
review. "Alternatively, [it] submits that there was sufficient evidence
adduced at trial to show that [Trusty] resisted a lawful arrest and
assaulted [the officer]." As we have indicated, the sufficiency of the
evidence is not the decisive question in these proceedings on certiora-
ri, and we do not consider it. Therefore, we have no need to reach
Trusty's second question posed in his petition for certiorari:
Did the trial court err in denying [Trusty's] motions for judgments
of acquittal with respect to the assault and resisting arrest charges?

App. 327, 332 n. 5, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982) (citation omitted).

*See Pharr v. State,* 36 Md.App. 615, 618, 375 A.2d 1129, *cert. denied,* 281 Md. 742 (1977); *Haslup v. State,* 30 Md.App. 230, 240, 351 A.2d 181 (1976). Professor Wayne R. LaFave, in his treatise on the Fourth Amendment, supports this view. He poses the question:

> If following his conviction the defendant takes an appeal and claims that his motion to suppress was erroneously denied, should the appellate court consider *trial* evidence favorable to either the defendant or the prosecution in resolving the Fourth Amendment claim [where the pretrial motion is not renewed at trial]? 4 W. LaFave, *Search and Seizure* § 11.7 (C) (2d ed. 1987).

With respect to trial evidence favorable to the prosecution, he observes:

> The notion that the trial record may be used by the appellate court to uphold a search or seizure notwithstanding the fact that the lower court erred in failing to suppress on the lesser amount of evidence produced at the pretrial hearing is an attractive one—after all, if it now appears that the Fourth Amendment was not violated, then why should the defendant be entitled to a windfall reversal of his conviction? It may be suggested, however, that the courts have been somewhat too willing to embrace this rule without considering whether it can be said that the defendant obtained a fair hearing on his Fourth Amendment claim. As one judge put it, we ought not "force the defendant to be prepared to retry before the jury the question which he has previously presented according to law for a final determination of the judge." Absent notice to the defense that the legality of the search and seizure is somehow an "open" question throughout the trial, the defendant might well not challenge certain trial testimony which bolsters the pretrial suppression ruling but is not particularly damaging on the issue of guilt or innocence. Moreover, if "facts" produced at trial may be readily utilized by an appellate

court to uphold a search challenged only in advance of trial, then the appellate tribunal is in a most curious position. It may be accepting as true certain testimony which conceivably neither the trial judge nor the jury believed or which neither judge nor jury had any reason to assess. *Id.* (footnote omitted).

The State asserts that "[s]o long as [the arresting officer] had reasonable grounds to believe that [Trusty] was committing an offense in his presence, the officer's arrest of [Trusty] was lawful." On the premise that the prosecutor proved at the trial on the merits that the officer did have reasonable grounds, the State urges that "consideration of the physical evidence seized after the arrest is irrelevant to a determination of the validity of the arrest," because "[t]he legality of an arrest is measured by the existence of probable cause at the time thereof, not by subsequent events which may lead to the release of the person arrested from police custody either immediately or ultimately," *citing Wilson v. State*, 2 Md.App. 210, 214, 233 A.2d 817, *cert. denied*, 251 Md. 753 (1968). The State concludes:

It follows accordingly that any consideration of the physical evidence seized after the arrest was irrelevant to and, if erroneous, harmless to the resisting arrest and assault determinations.

We have fully set out why this notion is utterly without merit.

▀▀▀ The State also calls attention to the purpose of the exclusionary rule as applied to searches and seizures in its attempt to salvage the convictions of resisting arrest and assault. It notes that the rule is "a prophylactic device designed to deter police misconduct. It does not confer a right upon an individual to the exclusion of evidence at a criminal trial as a matter of constitutional law," *citing Potts v. State*, 300 Md. 567, 582, 479 A.2d 1335 (1984). The State reasons:

Here, there was no police misconduct. The negligence was on the part of the prosecutor who did not adduce

sufficient facts at the suppression hearing to show that probable cause did indeed exist for [Trusty's] arrest. The prosecutor's negligence duly resulted in the reversal of the drug possession convictions. No deterrent purpose would be served, however, by reversing the resisting arrest and assault convictions simply because the jury may have considered the physical evidence seized incident to a lawful arrest. That would be tantamount to punishing the police for misconduct in which they had not engaged.

The exclusionary rule is not applied merely to deter police misconduct, although that may be an important effect. Even though it does not confer a constitutional right, under either the federal or the Maryland Constitutions, to have evidence excluded, it has the salutary effect of assuring that certain constitutional guarantees and prohibitions may not be violated to the detriment of a criminal defendant. A fair trial is the alpha and the omega of our administration of criminal justice. A goodly part of the federal Bill of Rights and Maryland's Declaration of Rights is devoted to this end. See, for example, Amendments V, VI and VIII to the Constitution of the United States and Articles 16, 17, 19, 20, 21, 22, 23, 24 and 25 of the Declaration of Rights. The guarantee that no person shall be "deprived of life, liberty, or property, without due process of law" is declared, as to federal prosecutions in the Fifth Amendment, and as to state prosecutions in the Fourteenth Amendment, and is encompassed in both Article Nineteen and Article Twenty-four of the Declaration of Rights. *See Crawford v. State*, 285 Md. 431, 404 A.2d 244 (1979). If we were to accept the State's notion that the error here may be overlooked as to the resisting arrest and assault convictions because there is no police misconduct to punish and because the prosecution has already suffered the reversal of the drug possession convictions, we would seriously undermine what our forefathers achieved after a long and bloody conflict to gain their independence and attempted to protect by the adoption and ratification of a constitution the declared purposes of which included to "establish Justice ... and secure the Blessings

of Liberty to ourselves and our Posterity...." Preamble to the Constitution of the United States.

■ No matter how culpable an accused may appear to be, he is entitled to have his guilt proved through a fair trial in accord with the due processes of the law of the land. As long as the exclusionary rule is in effect, it tends to this end. There was error here that cannot be excused as harmless. Trusty was thereby denied the fair trial constitutionally guaranteed him. We may not condone it.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSING THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY FOR POSSESSION OF HEROIN, COCAINE, MARIJUANA AND PARAPHERNALIA AFFIRMED;

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMING THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY FOR RESISTING ARREST AND ASSAULT REVERSED;

CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL;

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.